503 A.2d 719

**Paul H. WYNDHAM et ux.**

v.

**John Summer HAINES et al.**

**No. 40, Sept. Term, 1985.**

Court of Appeals of Maryland.

Jan. 31, 1986.

David B. Ginsburg, Baltimore (Cynthia E. Young, Annapolis, on brief), for appellant.

Angus R. Everton (M. Wayne Munday, P.A., on brief), Towson, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COUCH, Judge.

Paul Harrison Wyndham and his wife Rosalie Wyndham seek review by this Court of an order of the Circuit Court for Baltimore City (Kaplan, J.) dismissing their appeal from an adverse Health Claims Arbitration (HCA) award. The order also denied their petition to vacate the award.

The award was rendered by an arbitration panel following a day long hearing on the merits. At the conclusion of the claimants' evidence, the health care provider, Dr. Haines, moved to dismiss the claim. Finding that the claimants had failed to establish a prima facie case of either of their causes of action, the panel unanimously agreed to grant Dr. Haines' motion to dismiss.[1]  Accordingly, an award of no liability was entered in favor of Dr. Haines.

---

1. Appellants' lack of success before the arbitration panel was not due to any deliberate refusal to comply with the Health Care Malpractice Act. The panel chairman stated in an affidavit that the plaintiffs made a good faith effort to establish their case.

Within the prescribed time limits, the Wyndhams properly rejected the award in the Circuit Court for Baltimore City by filing a notice of rejection with the Health Claims Arbitration Office (HCAO).[2] In the Circuit Court for Baltimore City, they filed an action to nullify, a declaration and a prayer for a jury trial. The claimants also filed a petition to vacate the award alleging that "the Panel Chairman failed to act in a neutral and impartial manner." In response to these pleadings, the health care provider filed a motion to dismiss on the grounds that plaintiffs' failure to establish a prima facie case of liability at the arbitration level was tantamount to a refusal to properly submit their claim to arbitration.

Prior to trial, a hearing was held concerning the pending motions. Based solely on the arguments of counsel, the pleadings in the trial court, an affidavit of the panel chairman, the motion to dismiss and the opposition thereto, the trial court ordered dismissal of the action.[3] In a written Memorandum and Opinion Order, the court found "that Plaintiffs failed to properly submit their claim to Health

---

**2.** Section 3–2A–06(a) of the Courts and Judicial Proceedings Article of the Maryland Code (1974, 1984 Repl. Vol.) requires a notice of rejection to be filed with the Director and the arbitration panel and served on the other parties or their counsel within 30 days after the award is served on the rejecting party. Section 3–2A–06(b) requires the rejecting party to file an action in court to nullify the award and to file a copy of the action to nullify with the Director at or before the time for filing and serving the notice of rejection. *See also* Md.Rule BY2 a. Maryland Rule BY4 a 1 requires that the plaintiff in the action to nullify file and serve a declaration within 30 days after filing the notice of action. For a discussion of what a party aggrieved at the award must do to invoke judicial review see *Tranen v. Aziz,* 304 Md. 605, 500 A.2d 636 (1985).

**3.** Neither party provided the trial court with a transcript of the arbitration proceedings. However, the defendant attached the panel chairman's attorney data sheet, a letter to the panel chairman from HCAO, the arbitration panel determination, and its explanation as exhibits to an affidavit of the panel chairman. The affidavit alluded to at note 1 attesting to the plaintiffs' good faith was not before the court at the time of its decision to dismiss the action. It was later filed by plaintiffs in an attempt to persuade the circuit court to revise its judgment.

Claims Arbitration because they failed to produce enough testimony at the arbitration hearing to establish a prima facie case of liability."

Plaintiffs also received an adverse ruling on their petition to vacate. The trial court held that there was "no basis for concluding that the Panel Chairman for the arbitration ... was biased or prejudiced to justify vacating the arbitration award under Section 3–224(b)(2) of the Courts and Judicial Proceedings Article." Consequently, the petition to vacate was denied.

Appellants appealed these rulings to the Court of Special Appeals. Prior to consideration by that court, appellants sought and received a writ of certiorari from this Court. Because we find no statutory basis for the trial court's ruling on the motion to dismiss, we reverse the dismissal of the action. However, we affirm the trial court's denial of the petition to vacate.

I

*Motion to Dismiss*

■ The Health Care Malpractice Act (the Act) requires all claims against a health care provider for medical injury in excess of five thousand dollars to be submitted to mandatory arbitration prior to the institution of traditional court action.[4] Maryland Code (1974, 1984 Repl. Vol.), Courts and Judicial Proceedings Article, § 3–2A–02(a)[5]. *See Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57 (1978), *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978). In certain circumstances, dismissal of a party's complaint is an appropriate sanction for failure to comply

---

**4.** The compulsory arbitration system implemented by the Act has been held constitutionally sound. *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57 (1978), *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978).

**5.** All references to Code Sections are to the Courts & Judicial Proceedings Article unless otherwise indicated.

with the prescribed statutory arbitration procedure. *Oxtoby v. McGowan,* 294 Md. 83, 91, 447 A.2d 860, 865 (1982); *Schwartz v. Lilly,* 53 Md.App. 318, 324, 452 A.2d 1302, 1305 (1982). *But see Mitcherling v. Rosselli,* 304 Md. 363, 499 A.2d 476 (1985).

Thus, in resolving the first issue presented by this appeal, our task is to determine whether the Wyndhams' presentation of their claim to the panel constituted compliance with the statutory guidelines mandated by the General Assembly. If so, the plaintiffs have satisfied the condition precedent to court suit, and dismissal of their action was inappropriate. If, however, the conduct of their arbitration falls short of the legislative requirements, dismissal may have been proper.

The primary duty imposed upon a health care claimant by the Act is that he initially "file his claim" with the Director of the Health Claims Arbitration Office. § 3–2A–04(a). In *Bailey v. Woel,* 302 Md. 38, 485 A.2d 265 (1984), we determined that the mere physical filing of the statement of claim without the presentation of *any* evidence at the arbitration hearing will not suffice to satisfy the condition precedent. This holding was premised in part on our determination in *Attorney General v. Johnson* that one of the goals of the General Assembly in enacting the Health Claims Arbitration Act was to reduce the number of medical malpractice court suits. 282 Md. 274, 385 A.2d 57. Additionally, we found support in § 3–2A–05 of the Act which requires the panel to "first determine the issue of liability with respect to a claim." The panel's proper performance of this function obviously requires the presentation and evaluation of evidence. Finally, we noted that in light of the elaborate mandatory arbitration scheme implemented by the legislature, the adoption of a construction making compliance optional would be illogical and therefore should be avoided. *See Kindley v. Governor of Maryland,* 289 Md. 620, 426 A.2d 908 (1981). The totality of these factors convinced us to hold:

"[U]nder the Maryland statute, a plaintiff who presents no evidence before a medical malpractice arbitration panel has not satisfied the condition precedent of submitting his claim to arbitration prior to instituting court action. The proper action for a circuit court to take when such a claim is filed is to dismiss the claim."

*Bailey,* 302 Md. at 45, 485 A.2d at 268. In so doing, we acknowledged that other states with similar compulsory arbitration statutes had reached contrary results. *Id.* at 44, 485 A.2d at 267–68.

■■ Appellee would have us now carry this holding substantially further and require all medical malpractice plaintiffs to present a prima facie case of liability to the arbitration panel before appeal to the circuit court can be had. After a thorough examination of the Act and its supplemental rules and regulations, we find no authority for doing so. Such a requirement is simply not provided for in the statutory scheme.

Quite to the contrary, § 3–2A–06(a) permits a party to reject an award "for any reason" provided certain notice and filing requirements are timely fulfilled. The parties do not dispute that the appellants fulfilled the procedural requirements of § 3–2A–06(a).

Here, the controversy centers around whether they were substantively entitled to further pursue their claim. Without independent review of the evidence presented to the arbitration panel, the trial court accepted the panel's determination that a prima facie case of liability had not been presented. Equating this evidentiary shortcoming to a failure to arbitrate, the trial judge dismissed the case. *Bailey* was cited as his authority for doing so.

■■ In our view, the trial judge misapplied the principles set forth in *Bailey,* and the dismissal denied plaintiffs their day in court as preserved by § 3–2A–06. It cannot be overemphasized that the Act does not abridge or preclude a medical malpractice claimant's right to a common law tort action. As Judge Digges stated in *Attorney General v.*

*Johnson,* "Nowhere does the Act preclude the parties in the trial of the case from presenting whatever evidence and making whatever arguments on the merits of the claim they might have made had there been no pretrial arbitration." 282 Md. at 296, 385 A.2d at 70. The dismissal by the trial court did precisely that; on the basis of the panel's determination, it prohibited the plaintiffs from presenting their arguments at trial.

In effect, the trial court's ruling imposed an additional condition precedent to the maintenance of the traditional court action. This requirement is not to be found in the Act and we are hesitant to apply such a rule in the absence of a legislative directive. It is an established rule of statutory construction that "a court may not insert or omit words to make a statute express an intention not evidenced in its original form." *City of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174, 1177 (1984).

■ Appellee asserts that by refusing to imply this additional condition precedent, the judiciary is thwarting the legislature's goal of "screening out" non-meritorious claims. We do not question that the legislators had such a purpose in mind. However, as has been pointed out by Chief Judge Gilbert of the Court of Special Appeals, all screening is to be done at the arbitration level not the trial level. Specifically, Judge Gilbert stated:

"[T]he statute is strictly construed so as to effectuate the legislative purpose of screening malpractice claims *before* they reach the courts. Upon completion of the arbitration process and the filing of the correct and timely notice of rejection with the parties and court, the statutory screening process is terminated. All further proceedings are conducted in court and regulated, as are all other civil cases, by the Maryland Rules. Although judicial review of the HCAO actions might be regarded as a continuation of the arbitration proceeding, it is not. Rather, it is a new, separate, and distinct proceeding. It is litigation."

*Osheroff v. Chestnut Lodge,* 62 Md.App. 519, 525, 490 A.2d
720, 723 (1985), *cert. denied,* 304 Md. 163, 497 A.2d 1163
(1985). Thus, it is not the function of the trial court to
further screen malpractice claims.[6] By doing so, the trial
court exceeded its powers and denied plaintiffs their day in
court. We therefore reverse the dismissal and remand the
action to the circuit court for proceedings in accordance
with the Maryland Rules.

## II

### *Petition to Vacate*

We now address the second issue raised by this
appeal—whether the trial court properly refused to vacate
the panel's award on the basis of the alleged partiality of
the panel chairman.[7] This query is significant since a
finding that vacatur was warranted will result in exclusion
of evidence of the award at trial. § 3–2A–06(d). Other-
wise, the award will be admissible as evidence in the judicial
proceeding. *Id.*

Appellants allege that nearly a month before the arbitra-
tion hearing, their counsel inadvertently learned of possible
bias on the part of the panel chairman. Subsequent to his
appointment as panel chairman, the attorney member of the

---

6. Of course, a trial judge may still dispose of the claim through any
means provided by the Maryland Rules, *e.g.,* a motion to dismiss
made pursuant to Maryland Rule 2–322 or a motion for judgment
made pursuant to Maryland Rule 2–519(a). The Health Care Malprac-
tice Act expressly requires that the Maryland Rules govern the court
action to nullify the award. § 3–2A–06(b).

7. Appellee urges the Court to refuse to consider this issue on the basis
of Maryland Rule 828 b which requires a printed extract to contain all
parts of the record as may reasonably be necessary to decide the
appeal. Appellee contends that appellants' failure to include the
petition to vacate and the appellee's response in the record extract
violates this rule and precludes our addressing this issue. However,
appellee fails to note that the sanctions for violation of Rule 828 b as
provided by Rule 828 i 2 are discretionary. *Bergen v. State,* 234 Md.
394, 199 A.2d 381 (1964); *DeHart v. State,* 227 Md. 239, 176 A.2d 353
(1961). In the instant case the omission was not so egregious as to
warrant dismissal.

panel was retained as counsel to two different medical malpractice plaintiffs in unrelated cases. More importantly, it was discovered that the panel chairman's opposing counsel in the two unrelated matters was also counsel to Dr. Haines in the instant case. Appellants feared that the panel chairman's desire to maintain good rapport with defense counsel in the negotiation and settlement of his unrelated cases might subconsciously influence his decision-making in the case *sub judice*. To eliminate this possibility, however remote, appellants' counsel sought disqualification of the chairman.

Although the regulatory scheme contains detailed procedures for disqualifying a potentially biased panel candidate, *see* COMAR 01.03.01.07D(2), it does not give any guidance when the grounds for an allegation of possible bias do not arise until after the candidate has been impaneled and the arbitral process has commenced. In the instant case, the HCAO Clerk's Memorandum and the record indicate that appellants' counsel communicated his concern on several occasions, the first of which occurred approximately a month before the hearing date.[8] Counsel's attempts at disqualification culminated in the filing of a "Motion to Recuse Panel Chairman." This motion was never ruled on. The hearing proceeded as scheduled, and a unanimous award in favor of the health care provider was rendered.

In the circuit court, the award was the subject of plaintiffs' petition to vacate. The governing Code provision, section 3–224(b), states in pertinent part:

"(b) *Grounds.*—The court shall vacate an award if:

\* \* \* \* \* \*

(2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party."

---

**8.** The manner in which these early communications were made is not known. The documents, if there were any, are not in the record or record extract. The only indicia of these communications are the entries on the HCAO Clerk's Memorandum.

The trial court denied the petition to vacate, finding "no basis for concluding that [the panel chairman] was biased or could not render a fair and impartial decision."

This ruling by the trial judge was proper. Appellants failed to adduce the required proof of "evident partiality." The establishment of "evident partiality" requires more than speculation and bald allegations of bias.[9] The moving party must prove facts sufficient to permit an inference that there was indeed partiality by an arbitrator.

Here, appellants offered no proof in furtherance of their allegations.[10] Their petition to vacate was unsupported by affidavit despite the mandate of Md.Rule 2–311(d).[11] In light of the absence of evidence of "evident partiality," the trial court was correct in its denial of the petition to vacate.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED IN PART AND AFFIRMED IN PART; CASE TO BE REMANDED TO THAT COURT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.

---

**9.** In reaching this conclusion we are aware of *Hartman v. Cooper,* 59 Md.App. 154, 168, 474 A.2d 959, 967 (1984), *cert. denied,* 301 Md. 41, 481 A.2d 801 (1984). To the extent that *Hartman v. Cooper* is inconsistent with this opinion, it is disapproved.

**10.** Although a hearing was held on this matter, neither party has provided the Court with a transcript of these proceedings. It is not known whether a court reporter was present.

**11.** Md. Rule 2–311(d) states:
(d) *Affidavit.*—A motion or a response to a motion that is based on facts not contained in the record or papers on file in the proceeding shall be supported by affidavit and accompanied by any papers on which it is based.