639 A.2d 214

James R. KARL, et ux.

v.

Robert J. DAVIS.

No. 711, Sept. Term, 1993.

Court of Special Appeals of Maryland.

April 7, 1994.

44

Kenneth D.L. Gaudreau, Salisbury, for appellants.

Daniel C. Costello (Andrew E. Vernick and Wharton, Levin, Ehrmantraut, Klein & Nash, P.A. on the brief), Annapolis, for appellee.

Argued Before GARRITY, DAVIS and HARRELL, JJ.

GARRITY, Judge.

The primary issue presented by this appeal is whether appellants, James A. Karl and Pamela J. Karl, plaintiffs below, failed to arbitrate in good faith their claim of medical negligence in view of their decision to rely solely on expert discovery deposition testimony that failed to establish any breach of the applicable standard of care.

## FACTS

Following an accident in which his right hand was injured, Mr. Karl sought medical treatment on August 27, 1986, at the Emergency Room of Peninsula General Hospital and came under the care of Dr. Robert J. Davis. Dr. Davis x-rayed the extremity, repaired the soft tissue injuries, and prescribed physical therapy. Mr. Karl failed to experience relief and continued to complain of pain. Several months after his

treatment with Dr. Davis, Mr. Karl consulted Dr. A. Lee Osterman, who diagnosed carpometacarpal fracture dislocations [1] and performed corrective surgery.

The essence of the Karls' claim is that the original x-rays taken by Dr. Davis revealed the fractures and that Dr. Davis should have ordered additional x-rays to make a more accurate diagnosis. The Karls filed suit before the Health Claims Arbitration Panel (HCAP) alleging medical negligence, specifically that Dr. Davis failed to diagnose and treat the fracture dislocations and that, as a consequence of that failure, Mr. Karl suffered permanent injury. Mrs. Karl joined her husband with an additional count of loss of services and consortium.

Prior to the arbitration hearing, appellants' attorney advised appellee's attorney that appellants had elected not to present live testimony from Dr. Osterman but instead had chosen to read portions of Dr. Osterman's discovery deposition taken by counsel for Dr. Davis. Dr. Osterman, who was both treating physician and sole expert witness, was not deposed *de bene esse*.

In a letter dated January 6, 1993, appellee's counsel informed counsel for the Karls that the defense would object to introduction of Dr. Osterman's deposition testimony on the ground that it was inadequate to establish a violation of standard of care under Maryland law. The objections specified that the expert's opinions were not rendered to a reasonable degree of medical probability. Counsel for Dr. Davis filed a Motion in Limine arguing to exclude Dr. Osterman's opinion testimony, but the Panel Chairman withheld ruling until Dr. Osterman's testimony was presented at the hearing.

At arbitration on January 26, 1993, counsel for the Karls read into evidence the entire deposition testimony of Dr. Osterman and relied solely on it to establish a violation of the

---

1. A disruption of the articulation between the carpal and metacarpal bones, meaning a malalignment of those bones of the hand closest to the wrist and those bones that make up the wrist. *See* D. Green, *Operative Hand Surgery,* Vol. 1, 650–53 (1982).

applicable standard of care by Dr. Davis. Additional testimony was given as to the effect of the injury on Mr. Karl. At the close of the Karls' case in chief, Dr. Davis moved for and was granted Summary Judgment because of the Karls' failure to establish a *prima facie* case in that they "failed to establish how Dr. Davis violated the standard of care." The Panel Chairman ruled that Dr. Osterman's deposition testimony as to violation of the standard of care was not stated to be within a reasonable degree of medical probability. Further, the Chairman ruled that certain statements made by appellee's attorney during deposition did not constitute admissions of violation of the standard of care by his client.

■ The Karls filed a notice of rejection, and on April 30, 1993, a hearing was held in the Circuit Court for Wicomico County on the Karls' request to nullify the arbitration decision. The Court dismissed the action, ruling that the Karls had failed to arbitrate in good faith. The Karls appeal from that ruling arguing:

I. The Circuit Court erred in dismissing the case for failure to arbitrate in good faith because

a. The deposition testimony was adequate and

b. Statements made by Dr. Davis' counsel were sufficient evidence of admissions of liability to establish a *prima facie* case of violation of the standard of care.[2]

II. Should we decide that the motion to dismiss was improper, Mr. Karl should not be precluded from pursu-

---

2. Pursuant to Maryland Rule 8–504(a)(4), appellee urges that appellants have waived consideration of the issues sought to be presented in this appeal because of their failure to provide adequate citation to the record or transcript in support of their statement of facts and their failure to provide an adequate record extract. Although appellants complicated our task by citing to the record only once in their entire statement of facts, appellee has provided us with the entire deposition transcript of Dr. Osterman and we are able to reach this issue. As sanctions for failure to provide an adequate statement of facts are discretionary, the omission, in this particular case, was not so egregious as to warrant dismissal of the issue of good faith. *See Esteps Electrical v. Sager,* 67 Md.App. 649, 657, 508 A.2d 1032 (1986).

ing a claim for economic damages in circuit court, even though the HCAP failed to address the issue.

## DISCUSSION OF LAW

### I. *Appellants' Arbitration in Good Faith*

The Karls contend that only when a claimant willfully refuses to present *any* evidence at a panel hearing is dismissal for failure to arbitrate in good faith proper. *Bailey v. Woel,* 302 Md. 38, 45, 485 A.2d 265 (1984). Appellants argue that the court's acknowledgment, that the panel determined that the failure of the claimants to have established a *prima facie* case as its sole reason for having dismissed the claim, precluded him from dismissing the action for failure to arbitrate. Citing *Wyndham v. Haines,* 305 Md. 269, 503 A.2d 719 (1986), the Karls argue that mere failure to present adequate expert testimony before the panel may not be a basis for dismissal by the circuit court on the ground of failure to arbitrate.

■ The only reason that the question of appellant's good faith is even before us in this case is because the Panel Chairman, exercising his authority pursuant to Md.Code (1974, 1989 Repl.Vol.), § 3–214(b) of the Cts. & Jud.Proc. Article, allowed the deposition of Dr. Osterman to be presented to the panel. Had the Panel Chairman refused to admit the deposition, as he had every reason to have so ruled given the opportunity presented by appellee's motion *in limine,* [3]

---

3. Dr. Osterman's deposition should have been excluded because his expert opinions were not expressed in terms of "a reasonable degree of medical probability." For purposes of the subject statute, the requirement that a physician's opinion be expressed in such terms is not a "technical" rule. Additionally, it is clear that, had the Panel Chairman been bound by the technical rules of evidence, Dr. Osterman's deposition would also have been inadmissible under Maryland Rule 2–419. We recognize that technical rules of evidence do not strictly bind a Panel Chairman in arbitration proceedings. This does not mean, however, that the purposes and reasons behind these rules cannot be employed where the facts of a given case make their application appropriate. We are also mindful that the arbitration procedure was designed by the legislature as a pre-trial procedure for "screening malpractice claims before they reach the courts." *Wyndham v. Haines,*

this case would have presented a situation more analogous to *Bailey.* Absent the granting of the motion *in limine,* however, we are unfortunately presented with the need to divine whether appellant's counsel's misplaced reliance on Dr. Osterman's deposition suffices, as a matter of law, to demonstrate a lack of good faith in appellant's approach to the mandated arbitration process.

Maryland requires that all claims by a person against a health care provider for medical injury in which damages are greater than the limit of the concurrent jurisdiction of the District Court shall be brought pursuant to the Maryland Health Care Malpractice Claims Act (the Act) and may not be brought in any court of this State except in accordance with that statute. Md.Code (1974, 1989 Repl.Vol., 1993 Cum.Supp.) § 3–2A–02(a), (b) of the Cts. & Jud.Proc. Article. The Court of Appeals has interpreted the Act to require that such medical malpractice claims must be submitted to the HCAP before suit can be filed in the circuit court. *Attorney General v. Johnson,* 282 Md. 274, 287, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978), overruled on other grounds, *Newell v. Richards,* 323 Md. 717, 734, 594 A.2d 1152 (1991). We have said that more than mere lip service must be paid to this mandatory condition precedent before allowing the case to proceed in the circuit court. *Schwartz v. Lilly,* 53 Md.App. 318, 322–24, 452 A.2d 1302 (1982).

In certain instances, the proper remedy for failure to follow the special statutory arbitration procedure is dismissal. *Tranen v. Aziz,* 304 Md. 605, 612, 500 A.2d 636 (1985) (noncompliance with the mandatory requirement of filing notice of rejection of arbitration award mandates dismissal); *Bailey,* 302 Md. at 45, 485 A.2d 265 (claimant who presents no evidence at arbitration has not satisfied mandatory arbitration requirement and the claim must be dismissed by circuit court); *Oxtoby v. McGowan,* 294 Md. 83, 91, 447 A.2d 860 (1982) (trial

---

305 Md. at 276, 503 A.2d 719; quoting Chief Judge Gilbert's explication of the process in *Osheroff v. Chestnut Lodge,* 62 Md.App. 519, 525, 490 A.2d 720 (1985), *cert. denied,* 304 Md. 163, 497 A.2d 1163 (1985).

court gave no reasons for allowing case to proceed and record was silent as to evidence before the court; therefore, appellate court could not conclude that trial court erred in deciding that case was not subject to mandatory arbitration as a condition precedent to court suit); *Golub v. Spivey*, 70 Md.App. 147, 154–55, 520 A.2d 394 (1987) (failure of aggrieved party to institute action to review HCAP award along statutory guidelines mandated dismissal); *Schwartz*, 53 Md.App. at 324, 452 A.2d 1302 (dismissal was proper where plaintiff failed to file a claim with the HCAP in the first instance). *But see Wyndham*, 305 Md. at 275, 503 A.2d 719 (failure to produce sufficient evidence to establish a claim where there was a good faith effort to establish case, is not the type of situation subject to dismissal); *Mitcherling v. Rosselli*, 304 Md. 363, 368, 499 A.2d 476 (1985) (failure to provide copy of notice of rejection to panel as required by statute was not fatal where copy was filed with director, since director received notice in his individual capacity as well as the designated recipient for the panel); *Curry v. Hillcrest Clinic, Inc.*, 99 Md.App. 477, 497–501, 638 A.2d 115 (1994) (default as to one defendant did not preclude full litigation before the HCAP where evidence presented enabled panel to determine that defendant's liability, therefore satisfying the condition precedent to circuit court review). The public policy behind this mandatory condition precedent, to present a case fairly on its merits to the arbitration panel, is so strong that appellate courts will not hesitate to vacate judgments *sua sponte* and order dismissal where litigants have not followed the special statutory procedure. *Oxtoby*, 294 Md. at 91, 447 A.2d 860. (citations omitted).

The question squarely before us is what will constitute a good faith effort at arbitration such that cases that subsequently proceed to the circuit court pursuant to Md.Cts. & Jud.Proc.Code Ann. § 3–2A–06 will not be dismissed for failure to arbitrate. To allow less than a legitimate good faith attempt before the HCAP to satisfy the mandatory condition precedent would clearly thwart the legislative intent that all

claims of medical negligence over the appropriate jurisdictional amount be fairly presented and tried before the HCAP.

The issue of good faith attempt by counsel to arbitrate is a difficult and delicate one because it often requires courts to discern counsel's subjective motivation through his or her objective conduct. In this instance, we are required to determine whether the decision by counsel for the Karls to rely solely on the discovery deposition testimony of Dr. Osterman constituted failure properly to arbitrate the claim in good faith.

In the instant case, appellants argue that the entirety of the deposition submitted clearly established a violation of the standard of care by Dr. Davis, first by the opinions of Dr. Osterman, *some* of which were rendered within a reasonable degree of probability, and secondly by admissions made on behalf of Dr. Davis by his attorney. We turn first to the issue of Dr. Osterman's opinions.

### A. *Deposition Testimony and Violation of Standard of Care*

A *prima facie* case of medical negligence must establish (1) the applicable standard of care, (2) that this standard of care has been violated, and (3) that this violation caused the harm complained of. *Weimer v. Hetrick,* 309 Md. 536, 553, 525 A.2d 643 (1987) (quoting *Waffen v. U.S. Dept. of Health & Human Serv.,* 799 F.2d 911, 915 (4th Cir.1986)). Except in cases where the medical negligence alleged is of such gross and obvious nature that a layman can comprehend the breach of care, *Thomas v. Corso,* 265 Md. 84, 97, 288 A.2d 379 (1972); *Suburban Hospital Association, Inc. v. Hadary,* 22 Md.App. 186, 190, 322 A.2d 258 (1974), the standard of care and breach thereof must be shown by expert testimony. *Crockett v. Crothers,* 264 Md. 222, 224–25, 285 A.2d 612 (1972); *Brown v. Meda,* 74 Md.App. 331, 343, 537 A.2d 635 (1988), *aff'd,* 318 Md. 418, 569 A.2d 202 (1990).

While expert opinion must be based upon more than mere speculation, it need not be expressed with absolute

certainty. *Fink v. Steele*, 166 Md. 354, 363, 171 A. 49 (1934). We have required expert opinions to be established within a reasonable degree of probability. *Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 666, 464 A.2d 1020 (1982); *Andrews v. Andrews*, 242 Md. 143, 152, 218 A.2d 194 (1966); *Baughman Contracting Company v. Mellott*, 216 Md. 278, 283, 139 A.2d 852 (1958); *Ager v. Baltimore Transit Co.*, 213 Md. 414, 420–422, 132 A.2d 469 (1956); *State Rds. Comm'n v. Kamins*, 82 Md.App. 552, 560–61, 572 A.2d 1132, *cert. denied*, 320 Md. 800, 580 A.2d 219 (1990).

■ While generally the expert must express his opinion to a reasonable degree of probability, there is authority in Maryland that an expert may testify with respect to causation as to what is possible if, in conjunction with that testimony, there is additional evidence of causation introduced at trial that allows the finder of fact to determine that issue. *Charlton Brothers Transportation Co. v. Garrettson*, 188 Md. 85, 93–94, 51 A.2d 642 (1947); *see also, Hughes v. Carter*, 236 Md. 484, 485–86, 204 A.2d 566 (1964); *Langenfelder v. Thompson*, 179 Md. 502, 505, 20 A.2d 491 (1941).

> The law requires proof of probable, not merely possible facts, including causal relations. Reasoning *post hoc, propter hoc* is a recognized logical fallacy, a *non sequitur*. But the sequence of events, plus proof of *possible* causal relation may amount to proof of probable causal relation in the absence of evidence of any other probable cause.

*Charlton Brothers*, 188 Md. at 94, 51 A.2d 642 (citations omitted, emphasis in the original). The issue *sub judice*, however, is the standard of care.

There is no appellate court opinion in Maryland that has held that the mantra "within a reasonable degree of medical probability" is absolutely required before each and every medical expert opinion. It is understood, however, that "[t]hese wooden phrases are required to make sure that the expert's opinion is more than speculation or conjecture." J. Murphy, *Maryland Evidence Handbook*, § 1404 (2d ed. 1993). Furthermore, appellate courts have made clear that expert

testimony based upon anything less than a reasonable degree of probability may be properly excluded. *Johns–Manville,* 296 Md. at 666, 464 A.2d 1020; *Hines v. State,* 58 Md.App. 637, 670, 473 A.2d 1335 (1984).

■ Upon review of the entire deposition of Dr. Osterman, we conclude that every opinion that was rendered by him regarding the violation of the standard of care, other than those of a collateral nature, failed to reflect that the standard he was applying was within a reasonable degree of medical probability. In most instances, there is *no* indication as to what standard Dr. Osterman was applying to his opinions. This difficulty may have arisen because the deposition was not taken in anticipation that it would act as a substitute for trial testimony, but was merely intended to be the original discovery deposition conducted by defense counsel. As Dr. Osterman's opinion as to breach of the standard of care was not rendered "within a reasonable degree of medical probability," we hold that the panel properly disregarded it. Therefore, because Dr. Osterman's deposition was the only expert testimony offered by the claimant, the panel correctly ruled that the claimant failed to establish that Dr. Davis had breached the appropriate standard of care.

## B. *Admissions by Appellee's Counsel*

■■ We are called upon to determine whether certain so-called admissions by counsel for Dr. Davis during his deposition questioning of Dr. Osterman might have established a violation of the standard of care. Counsel for the Karls contends that he believed that statements made by appellee's attorney during deposition were of such a declaratory nature as to cause him to conclude that appellee's attorney had stipulated to Dr. Davis' liability. He claims that the form of questions posed by counsel for Dr. Davis to Dr. Osterman constituted admissions of a breach of the standard of care. The law in Maryland is that a statement by a party's agent concerning a matter within the scope of employment, regardless of whether the agent has speaking authority or whether the agent's statement was part of the *res gestae,* can serve as

an admission by that party.  *See B & K Rentals v. Universal Leaf,* 324 Md. 147, 161–62, 596 A.2d 640 (1991).  The following statements are offered by appellants as admissions of liability by Dr. Davis through his agent/attorney:

DIRECT EXAMINATION OF DR. OSTERMAN BY DEFENSE COUNSEL:

Q.  Is it your opinion that Dr. Davis' failure to recognize the fracture and dislocations that you've talked about constitutes a violation of the standard of care or is something that a reasonably competent practitioner under the circumstances could have missed, also?  . . .

A.  . . . He should have treated the second problem [the carpometacarpal fracture dislocations] as well.

Q.  . . . other than the fact that he failed to obviously detect the dislocation and the fracture, I'm assuming it's your opinion that as treatment went on, he should have picked it up at some point in time?

A.  Right.

\*       \*       \*       \*       \*       \*

Q.  And when I talk about the accident, I am not talking about the delay in diagnosis that exists in this case.  Are we on the same wavelength on that?

A.  I am.

Q.  Great.  What effect did the [automobile] accident, just the accident, have on Mr. Karl's Kienbock's?[4] . . .

\*       \*       \*       \*       \*       \*

Q.  And is it—so that as far as Mr. Karl is concerned, the fact that there is the malpractice that we have talked about—I will get into the specifics of what Davis did or didn't do in a moment, but as far as the effects of that on

---

4.  A disease of unknown origin effecting the blood supply to the lunate bone of the wrist resulting in bone death that can create progressive deformity.  *Campbell's Operative Orthopaedics,* Vol. 5, 3143–45 (Mosby, 8th ed. 1992).  Defense counsel was probing the possibility that Mr. Karl had this disease prior to his automobile accident for which he sought treatment with Dr. Davis.

Mr. Karl, it did not change his Kienbock's from one stage to another stage?

A. No. ...

Q. Basically with regard to Mr. Karl, if he had been treated in an appropriate fashion by Dr. Davis or a reasonably competent practitioner on August 27, 1986, or shortly thereafter, it's my understanding that [because he has Kienbock's] he still would have expected to incur the 70 to 75 percent of the deficits that he now has?

A. I believe so, yes.

Q. And that because of the malpractice he has an additional 25 or 30 percent?

A. Probably.

We recognize the adversarial tenor of litigation, more specifically that a plaintiff's expert is an opposing witness and may very well be critical of the defendant's actions or inaction. These questions merely cut to the basis for that criticism during the discovery phase of the litigation proceeding. The purpose of broad and comprehensive discovery rules concerning experts is to allow parties "to properly prepare their claims and defenses, thereby advancing the sound and expeditious administration of justice." *Rubin v. Weissman,* 59 Md. App. 392, 400–01, 475 A.2d 1235 (1984) (quoting *Baltimore Transit Co. v. Mezzanotti,* 227 Md. 8, 13, 174 A.2d 768 (1961)). To require that every question posed in a discovery deposition of an adverse witness be couched in terms of "alleged malpractice" or "claimed negligence" goes beyond the clear mandate for expeditious litigation.

Further, the cases cited by the Karls as dispositive on the issue of attorney admissions are easily distinguishable from the case *sub judice* because appellee's attorney was not representing a material fact to a tribunal. A trial judge was not making factual inquiry of counsel in open court. *See Prince George's Properties, Inc. v. Rogers,* 275 Md. 582, 588, 341 A.2d 804 (1975). Nor was the attorney proffering a stipulation to the bench in open court. *See Secor, Adm'r. v. Brown,* 221 Md. 119, 122–23, 156 A.2d 225 (1959). We will not allow counsel to

rely on the form of questions posed by opposing counsel in a discovery deposition to meet counsel's burden of establishing a *prima facie* case.

Resolution of these issues returns us to the initial question of whether the dismissal by the circuit court for failure to produce sufficient evidence of breach of the standard of care constitutes failure to arbitrate in good faith.

### C. *Motion to Dismiss in the Circuit Court*

The mere filing of the statement of claim pursuant to the Act § 3–2A–04(a) without presentation of any evidence does not satisfy the mandatory arbitration requirement, and dismissal by the circuit court is appropriate. *Bailey,* 302 Md. at 45, 485 A.2d 265. The Act does not, however, abridge a claimant's right to a common law tort action and dismissal of a claim may be improper if the failure at arbitration was due to insufficient testimony to establish a *prima facie* case of liability. *Wyndham,* 305 Md. at 276, 503 A.2d 719.

In *Wyndham,* the claimant's failure at arbitration was clearly not due to any deliberate refusal to present sufficient evidence. Indeed, the Panel Chairman stated in an affidavit that the claimant had made a good faith effort to establish his case. *Id.,* at 271, n. 1, 503 A.2d 719. This is fundamentally different from the case at bar. *Wyndham* does not stand for the proposition that a failure to present a *prima facie* case for *any* reason is sufficient to allow a subsequent trial in circuit court to proceed. Nor does *Wyndham* require us to hold that presentation of some form of expert testimony is sufficient to satisfy the condition precedent to arbitrate. Such an interpretation would require us to hold that any evidence presented, regardless of adequacy, substance, surrounding circumstances, or the motivations of counsel, would be sufficient to comply with the mandate to arbitrate the issue.

In determining whether there was a good faith effort to arbitrate, the issue is not whether a *prima facie* case was established, but *why* a *prima facie* case was not established.

We return to the facts and circumstances of the matter before us.

We must determine if failure to present expert testimony regarding breach of the standard of care "within a reasonable degree of medical probability," after having been apprised, or at least put on notice, of the testimony's inadequacy under Maryland law, established deliberate conduct of counsel such that a finding of failure to arbitrate in good faith and subsequent dismissal was warranted. Appellants' counsel was made aware of the deficiencies of the deposition of his sole expert witness and was advised of the exact and specific nature of the objection to the expert testimony. Specifically, a letter from appellee's attorney to him, sent twenty days prior to arbitration, identified objections by page and line numbers and went on to inform counsel:

> As you will notice in reviewing the opinion questions presented to Dr. Osterman, none of those that I have objected to ask him to render opinions "to a reasonable degree of medical probability." As you are well aware, this is the standard within the State of Maryland and therefore his opinions are not valid in arbitration or court proceedings.

Following this letter and pre-arbitration, counsel for Dr. Davis filed a Motion in Limine to exclude Dr. Osterman's inadmissible opinion testimony. The Panel Chairman, by telephone, reserved his decision until the hearing. There is nothing in the record below to indicate that claimants' attorney had made any attempt to re-depose Dr. Osterman, to subpoena Dr. Osterman as a witness, or that Dr. Osterman was unable to serve as a witness at the arbitration. At the hearing, the deposition was read into the record, and at the close of the Karls' case, the arbitration claim was dismissed because "[c]laimants failed to establish how Dr. Davis violated the 'standard of care' in treating Mr. Karl." After the Karls filed a Motion to Reject the Arbitration Award in circuit court, Dr. Davis filed a Motion to Dismiss for failure to arbitrate in good faith. The motion was granted.

In *Bailey,* the Court interpreted *Johnson* as requiring a "thorough dispute resolution process" before the HCAP. *Bailey,* 302 Md. at 42, 485 A.2d 265. The Court observed that if the panel had no evidence from which to determine liability, the panel could not perform its duty to determine the issue. *Id.,* at 42–43, 485 A.2d 265.

█ Reading *Wyndham* and *Bailey* together, it is clear that we will not allow dismissal of a case from the circuit court if the claimant has made a good faith effort, but, nevertheless, has failed to establish a *prima facie* case of medical negligence. It must therefore follow that if a claimant fails to establish a *prima facie* case because of a deliberate or knowing refusal to proffer adequate testimony, the claim must be dismissed. This requires some evidence of deliberate or knowing conduct on the part of the claimant or his or her counsel.

The evidence before us is that appellants' counsel, however erroneously, relied upon inadequate expert deposition testimony because of his belief in its adequacy, together with "admissions" by defense counsel. We also note that counsel for the Karls, as perhaps an understatement, admitted at oral argument that inexperience may have been a factor in this case. Further, we cannot support a finding of subjective knowledge of a legal principle merely because opposing counsel sent a letter stating that legal principle during an adversarial proceeding. In our view, this did not establish a subjective knowing or deliberate refusal on the part of claimants' counsel to present competent expert testimony to the panel.

We also observe that the case at bar is distinguishable from *Newman v. Reilly,* 314 Md. 364, 382, 550 A.2d 959 (1988), wherein the Court of Appeals reversed a circuit court grant of sanctions for prosecuting a claim without substantial justification pursuant to Maryland Rule 1–341. In *Newman,* the HCAP Chairman at the prearbitration hearing granted summary judgment to the health care provider because the claimant had refused to designate an expert witness. The subsequent circuit court order dismissing the case was not appeal-

ed. Instead, an appeal was generated from a circuit court grant of sanctions against the claimant and the claimant's attorney for bringing suit without substantial justification. *Id.* 314 Md. at 373, 550 A.2d 959. The case is inapposite because the circuit court was found to have concluded erroneously that expert testimony at arbitration was necessary in a claim of improper involuntary commitment. *Id.,* 314 Md. at 381, 550 A.2d 959. The Court of Appeals pointed out that there was a colorable argument that the standard of care was set forth in Md.Code Anno. Health–General § 10–616(a)(1)(i) (1982) and that no expert might be needed to determine whether the statutory requirement of a "personal examination" prior to commitment was met. *Id.,* 314 Md. at 381–82, 550 A.2d 959. Here, there is no dispute that expert testimony was proffered or that expert testimony was necessary to establish a violation of the standard of care.

Upon examination, we cannot conclude, under the facts and circumstances of this case, that the conduct of appellants' counsel evidenced a lack of good faith in an effort to circumvent the mandatory requirement that medical negligence cases be submitted to arbitration to undergo a thorough dispute resolution process prior to presenting the controversy to circuit court.

Our holding is, of course, limited to the unique facts of this case. In the future, therefore, if the plaintiff's entire evidence before the HCAP, regarding standard of care, consists of a transcript of opinions not expressed to a reasonable degree of medical probability by the plaintiff's expert during his or her discovery deposition, the plaintiff will not have made a good faith effort to arbitrate. To hold otherwise would be to invite counsel to abuse the arbitration process by use of discovery depositions containing inadmissible opinions.

## II. *Economic Damages*

Appellants' claim for economic damages was not addressed by the panel, as the case had been dismissed for failure to

**60**

make a *prima facie* case.   Therefore, this issue is not properly before us.   Appellants can address it anew on remand.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR WICOMICO COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.   COSTS TO BE PAID BY APPELLEE.**