REPORTED
IN THE COURT OF SPECIAL APPEALS
OF MARYLAND
No. 1391
September Term, 2015

_____

KAREN STREAKER

v.

KRISTINA BOUSHEHRI, ET AL.

_____

Berger,
Nazarian,
Beachley,

JJ.

_____

Opinion by Nazarian, J.

_____

Filed:  September 28, 2016

This medical malpractice appeal presents questions about the burden of proof under Courts & Judicial Proceedings Article § 3-2A-04(b)(4), known colloquially as the Twenty Percent Rule. After finding that Karen Streaker's expert witness failed to satisfy this rule, which disqualifies expert witnesses who devote annually more than twenty percent of their professional activities to activities that directly involve testimony in personal injury claims, the Circuit Court for Howard County granted summary judgment against her and in favor of Kristina Boushehri and Capital Women's Care, LLC ("CWC"). On appeal, Ms. Streaker contends that the trial court erred when it included certain of Dr. Borow's activities in the numerator of the Twenty Percent Rule calculation. We affirm.

## I. BACKGROUND

On October 31, 2013, Ms. Streaker filed a complaint against Ms. Boushehri, a Certified Nurse Midwife, and CWC, her practice, alleging negligence and breach of contract. She filed first in the Circuit Court for Prince George's County, and the case was transferred to the Circuit Court for Howard County. The complaint stemmed from injuries Ms. Streaker alleged that she suffered while under their care from November 2009 to June 2010. The details of Ms. Streaker's medical claims aren't central to the issues on appeal; it will suffice for present purposes that Ms. Streaker alleged that Ms. Boushehri's care not only failed to resolve her symptoms and discomfort, but caused her to suffer complications that landed her in the hospital, required her to undergo surgery, and caused ongoing kidney disease.

As required by Maryland's Health Care Malpractice Claims Act (the "Act"), Ms. Streaker designated a medical expert, Lawrence S. Borow, M.D., to certify that Ms.

Boushehri and CWC had departed from the relevant standards of care and that the departures proximately caused Ms. Streaker's personal injuries and damages. In August 2013, Ms. Streaker filed a Certificate of Qualified Expert from Dr. Borow in which he attested that he did not devote more than twenty percent of his professional time to activities that directly involve testimony in personal injury claims. In response, the defendants served discovery, including discovery relating to Dr. Borow's professional activities. Dr. Borow produced some materials, but declined to produce others. The defendants eventually filed a motion to compel financial records that the court granted, albeit a week before trial and the day before Dr. Borow's scheduled *de bene esse* deposition.

The videotaped *de bene esse* deposition of Dr. Borow took place on May 27, 2015. In addition to the discovery mentioned above, the defendants also had subpoenaed Dr. Borow's office calendar and a list of his prior testimony, but Dr. Borow moved (in Pennsylvania, where he lives) to quash it, and the deposition went forward without those materials. Dr. Borow testified during the direct examination portion of the deposition that he spent approximately fifteen percent of his professional time on work that directly involves testimony in personal injury actions. On cross, the defense challenged his calculation, contending that Dr. Borow had mis allotted time spent preparing for depositions as work not directly related to testimony. They complained as well that Dr. Borow's records were incomplete and that he had failed to reveal or itemize work he had performed as an expert witness.

2

Before trial, Ms. Boushehri and CWC moved *in limine* to exclude Dr. Borow's testimony because he failed to satisfy the Twenty Percent Rule. On June 2, 2015, the trial court heard argument, recessed, then granted the motion from the bench. The court reviewed the two major cases applying the Twenty Percent Rule, *Witte v. Azarian*, 369 Md. 518 (2002), and *Waldt v. University. of Maryland Medical System. Corp.*, 411 Md. 207 (2009), reviewed the evidence and testimony, and attempted to calculate the percentage of time that Dr. Borow devoted to activities that directly involve testimony in personal injury claims. But after placing the burden of proof of the motion on the defendant, the court struggled to make the calculation from the documents and information Dr. Borow had produced (or, more to the point, the documents and information he hadn't produced):

> So the reason why the Court read that testimony—which the Court finds important—is because I think it really relates and connects to the issues that we have before the Court of whether or not the twenty percent of the expert professional activities – were more than twenty percent. We know, based on the one case, that twenty point six percent and the slightest amount over twenty percent would, in fact, prohibit and preclude the witness from testifying.
>
> And the Court has considered the arguments presented by both the plaintiff as well as the defendants in their calculations. But the Court finds that the defendants'–what I would call version or analysis—is much more accurate of the testimony that's been, in fact, presented concerning the doctor's activities.
>
> So clearly based on—and I'm only going to use 2014, which is what—let me also back up. Because one of the questions is, who has the burden. Because in reading 3-2A-04 it just says that that is the prohibition, no more than twenty percent. It doesn't really say who has the burden. I know in the defendant[s'] memo the defendant says that the plaintiff has

3

the burden. But if—it is the Court's opinion that the defendant would have the burden to challenge that and to present sufficient information to this Court to make that decision. So I don't find that it is the plaintiff's burden, I do find it is the defendant's burden.

The other issue that this Court is considering is that based on the witness's testimony that he clearly knows—meaning the doctor—about the twenty percent rule, he has testified numerous times—the Court finds it curious that he does not itemize or keep records to that extent. The Court also noted that he failed to produce his calendar that was subpoenaed. The Court also recognizes that he has used the legal system in the state of Pennsylvania to prevent the production of it. And my question is why? And then whether or not this Court should draw an adverse inference from that failure. Because clearly we have an expert witness who knows the rules of the state and when asked to produce it for whatever reason, he has used the legal system to prevent that. And that still is the lingering question as to why, and should this Court draw an adverse inference that the reason why he didn't produce it was because it would show he has over twenty percent. But I am not going to go that far, I'm just going to base my decision on the information that has been, in fact, presented.

It is clear to this Court that when you consider the factors that I am required to under the case law, and seeing that in 2014 he did, in fact, earn three hundred and twenty-four thousand six hundred and two dollars from what we would call as an expert. We know that he bills four hundred dollars an hour. And also, we also know that one of the 10-99s was not included so I am also questioning how many others have not been included. But from what we do have at four hundred dollars an hour, that comes to eight hundred eleven hours a year which is sixteen hours per week based on the medical legal work. And when the court makes the division it comes to thirty-three point one two percent. That is clearly above the twenty percent rule that is prohibited by the statute.

So, therefore, the court will grant the motion to exclude the testimony of Dr. Borow because he is performing more than twenty percent of his time on medical legal work which is

4

prohibited by the statute. So that is going to be the decision of this Court concerning that issue.

The court's decision to exclude Dr. Borow left Ms. Streaker with no expert to testify that the defendants had breached the standard of care in her treatment, and the court granted the defendants' oral motion for summary judgment. Ms. Streaker filed a motion to reconsider the exclusion of Dr. Borow's testimony, which the court denied. This timely appeal followed.

## II. DISCUSSION

Ms. Streaker characterizes the circuit court's decision, and its errors, as a purely legal dispute over the range of professional activities that may be included in the numerator for the Twenty Percent Rule calculation. She contends *first* that the trial court erred in excluding Dr. Borow's testimony when it included initial case reviews among the activities that "directly involve testimony in personal injury claims," and thus inflated the proportion of his professional activities falling into that category. From there, Ms. Streaker argues *second* that, "having erred in precluding Dr. Borow from testifying, the circuit court erred in granting summary judgment" in favor of Ms. Boushehri and CWC.[1] We see the case

---

[1] Ms. Streaker's brief phrased the Questions Presented as follows:

1) Whether the circuit court erred in precluding Dr. Borow from testifying at trial on the basis that Dr. Borrow did not meet the requirements of the "20% Rule (MD. CTS. & JUD. PROC. CODE § 3-2A-04(B)(4)) when the circuit court failed to follow the holding of *Witte v. Azarian*, 369 Md. 518, 801 A.2d 160 (2002) that an initial case review is not an activity "that directly involve[s] testimony in personal injury claims"?

differently. This was not a case in which the circuit court simply plugged the wrong value into a straightforward equation. Instead, the court was left to reverse-engineer Dr. Borow's activities from a messy and hotly disputed record, and we agree that the Doctor failed the Twenty Percent Rule even though the court opted (erroneously, as we explain) not to hold Ms. Streaker to the burden of proof.

## A. The Trial Court Correctly Excluded Dr. Borow's Testimony.

At the beginning of a medical malpractice action,[2] a plaintiff must file a certificate of qualified expert in which the claimant must attest that the defendant(s) departed from standards of care and that the departure(s) proximately caused the alleged injury. Md. Code (1973, 2013 Repl. Vol.), § 3-2A-04(b)(1)(i) of the Courts & Judicial Proceedings Article ("CJ").[3] The term "qualified" in that phrase does not refer to the certifying expert's education or experience or expertise—that notion of qualification is (still) measured by Maryland Rule 5-702 and the law interpreting and applying that rule, and also by CJ § 3-2A-02(c). It refers instead to an additional statutory threshold that applies only to certifying and standard of care experts in medical malpractice cases: "qualified" experts "may not

---

2) Whether, having erred in precluding Dr. Borow from testifying, the circuit court erred in granting summary judgment in favor of the defendants?

[2] A certificate of qualified expert is not required for claims in which the sole issue is a lack of informed consent. *Id*.

[3] This affidavit requirement applies to both sides: a defendant must counter a plaintiff's affidavit with one from a qualified expert of her own attesting to compliance with the standard of care or that the departure was not the proximate cause of the plaintiff's injury. If the defendant fails to do so, the court may find in favor of the plaintiff on liability for that reason. CJ § 3-2A-04(b)(2)(i).

6

devote annually more than 20 percent of the expert's professional activities to activities that directly involve testimony in personal injury claims." CJ § 3-2A-04(b)(4). This limitation is known in common parlance as the "Twenty Percent Rule."

The Twenty Percent Rule requires the court to "perform a mathematical equation: [it] must identify those activities that 'directly involve testimony in personal injury claims' (the numerator) and then divide it by those activities that comprise the body of 'professional activities' in general (the denominator)." *Waldt*, 411 Md. at 222. The activities that "directly involve testimony" in personal injury claims, and thus make up the numerator, are: "(1) the time the doctor spends in, or traveling to or from, court or deposition for the purpose of testifying, waiting to testify, or observing events in preparation for testifying, (2) the time spent assisting an attorney or other member of a litigation team in developing or responding to interrogatories and other forms of discovery, (3) the time spent in reviewing notes and other materials, preparing reports, and conferring with attorneys, insurance adjusters, other members of a litigation team, the patient, or others after being informed that the doctor will likely be called upon to sign an affidavit or otherwise testify, and (4) the time spent on any similar activity that has a clear and direct relationship to testimony to be given by the doctor or the doctor's preparation to give testimony." *Witte*, 369 Md. at 535-36. Professional activities, the activities that comprise the denominator, are activities that "contribute to or advance the profession to which the individual belongs or involve the individual's active participation in that profession." *Waldt,* 411 Md. at 226. And in defining the expert's total universe of professional activities, "a distinction must be drawn between the hours spent furthering one's profession

7

versus the hours spent on personal or leisurely pursuits." *Id.* Experts need not necessarily still be seeing patients, but they must be engaged professionally, and actively so:

> Though active clinical practice is not required, the doctor must still engage in professional activities other than testifying in court. Such a doctor is still required to satisfy the 20 Percent Rule. This allows a qualified doctor to continue to utilize his or her expertise, but prevents him or her from launching a second career as purely an expert witness. The primary professional activities (at least 80 percent) must still be in the medical profession that he or she is professing.

*Id.* at 228.

### 1. Ms. Streaker bore the burden of proving that Dr. Borow satisfied the Twenty Percent Rule.

We review the trial court's decision to exclude expert testimony for abuse of discretion. *Id.* at 251. Before undertaking that review, though, we address Ms. Streaker's contention that the *defendants*, Ms. Boushehri and CWC, bore the burden of proving that her expert, Dr. Borow, did *not* satisfy the Twenty Percent Rule. Under Ms. Streaker's theory, a trial court must accept the expert's certification that he satisfies the Twenty Percent Rule unless the defense proves otherwise—essentially, that experts are presumed qualified until proven otherwise.

As the plaintiff in this case, Ms. Streaker bears the burden of proving her claims. *Cooper v. Singleton*, 217 Md. App. 626, 649-50 (2014) ("*[T]he burden of persuasion never shifts in a medical malpractice case, and as at common law, the plaintiff must carry this burden.*") (emphasis in original) (citations omitted)). And generally, the proponent of expert testimony (on whatever side of a case) bears the burden of proving that her expert is qualified to testify and that the testimony will assist the trier of fact. *See* Md. Rule 5-

8

702(1); *Mitchell v. Montgomery Cnty.*, 88 Md. App. 542, 552 (1991). Those straightforward and unremarkable principles by themselves seem to refute Ms. Streaker's argument that the defense bore the burden to *dis*qualify her expert, but the statutory context of this case bolsters the point further.

Parties in civil cases normally are free to hire, offer, and attempt to qualify via Rule 5-702 whatever experts they like, even Hired Guns. The parties and the court can explore the expert's *bona fides* or mercenary nature through qualifying testimony and *voir dire*, and, assuming the expert is permitted to testify, the fact-finder can credit or discount his testimony accordingly. Not in medical malpractice cases, though. In response to concerns about rising medical malpractice insurance premiums in the 1980s, the General Assembly (among other changes) specially narrowed the universe of potential expert witnesses in medical malpractice cases. *See Witte*, 369 Md. at 526-31. One way it accomplished this narrowing was through the Twenty Percent Rule, *i.e.*, by precluding experts who "devote annually more than 20 percent of [their] professional activities to activities that directly involve testimony in personal injury claims," CJ § 3-2A-04(b)(4), from certifying departures from or compliance with standards of care. Put another way, the Act put teeth in the certification requirement by preventing parties from using professional experts to satisfy it. And because a certifying affidavit from a qualifying expert is a condition precedent to maintaining or defending against a claim that a health care provider violated a standard of care, *compare* CJ §§ 3-2A-04(b)(1) *with* (b)(2) , the burden of proving the expert's qualifications is an inextricable part of the party's burden of proof. So for a plaintiff such as Ms. Streaker, this means that she bore the burden of proving that Dr.

9

Borow was a "qualified expert," and therefore that he satisfied the Twenty Percent Rule.[4]

But although we disagree with the circuit court in this regard, our holding doesn't help Ms. Streaker—the court required Ms. Boushehri and CWC to refute Dr. Borow's certification, as she had contended it should, and ruled against her anyway.

> **2.    The court made a reasonable calculation from a disputed and messy record**.

This brings us to the merits of the Twenty Percent Rule calculation.[5]  Ms. Streaker asserts that the trial court erred in finding that Dr. Borow failed the Twenty Percent Rule because it erroneously included in the numerator of the calculation, as "activities that directly involve testimony in personal injury claims," time that Dr. Borow spent on initial case reviews.  She contends that the Court of Appeals expressly excluded initial case reviews from the Twenty Percent Rule numerator when it held, in *Witte*, that the numerator included (among other things not at issue here) "the time spent in reviewing notes and other materials, preparing reports, and conferring with attorneys, insurance adjusters, other members of a litigation team, the patient, or others *after being informed that the doctor will likely be called upon to sign an affidavit or otherwise testify*."  369 Md. at 535-36 (emphasis added).  Her reading of *Witte* assumes that any activity before the expert is notified that he or she will likely be called upon to sign an affidavit or otherwise testify is not "activit[y] that directly involve[s] testimony" in personal injury actions.  In her view, the court erred

---

[4] The same would be true with regard to a defense expert who certified compliance with a standard of care under CJ § 3-2A-04(b)(2).

[5] The parties appear to agree that the relevant time period was Calendar Year 2014.

on the law when it included time Dr. Borow spent on initial case reviews, and that if we hold as much, the correct calculation, with the initial case review time excluded, will bring Dr. Borow under the Twenty Percent Rule threshold.

It is true that the circuit court's calculation of Dr. Borow's activities didn't segregate or eliminate initial case reviews, or even account for them. But that didn't reflect a conscious legal or mathematical decision on the court's part—it reflects the fact that the record about Dr. Borow's activities was, to put it as neutrally as possible, disputed and incomplete. The trial court was not presented with detailed records of Dr. Borow's activities during the relevant period. To the contrary, the court had to resolve discovery disputes over the records the Doctor had and hadn't produced, and faced lingering questions about what might be missing from his testimony and productions (including a motion Dr. Borow filed in his home state ahead of his trial deposition to quash a subpoena for his office calendar and list of prior depositions). Nor did Dr. Borow attempt to separate medical legal work that he sought to exclude from the Twenty Percent Rule numerator, except through a two-page handwritten summary he prepared and offered for the first time at his *de bene esse* deposition. The trial court's ultimate calculation was, as we discuss below, an estimate from a muddled record, one that required the court first to assess the relative credibility of the evidence feeding it. The court's decision that Dr. Borow's testimony about his activities lacked credibility was not clearly erroneous, and we see no abuse of discretion in its decision to exclude his testimony.

Indeed, the court made the most of the record it had. At the close of the hearing on the defendants' motion to exclude Dr. Borow's testimony, the court left the bench and

11

considered Dr. Borow's deposition testimony about the time he spent on activities that directly involve testimony in personal injury actions, Dr. Borow's tax records, arguments from both parties, and the relevant cases. And in its oral opinion, the court highlighted at some length the facts on which it based its decision, in the process highlighting the lack of precision in the information Dr. Borow provided:

- Dr. Borow testified that he typically spends about 46-50 hours in the office on weekdays and 8-10 hours on medical-legal work on nights and weekends, and that some of these hours included medical legal review and depositions.

- Although subpoenaed to bring a list of cases he had worked on that year, Dr. Borow declined to bring it, and produced no record of the number of depositions he had done that year, or of the number of hours he spent preparing or traveling for trial or time spent testifying at trial.

- Dr. Borow charged by the hour for his medical legal work, yet did not itemize his time or keep track of the number of hours he spent on legal case work.

- Dr. Borow had testified as a medical expert for years in Maryland, but had never calculated the number of hours he spent doing medical legal work. In his trial deposition, he testified that he spent fifteen percent of his time doing medical legal work, but on previous occasions testified that it was ten percent, and later said it was maybe twelve percent.

- Dr. Borow charges $400 per hour for trial testimony, and a $1,200 minimum for depositions (which covers the first three hours). His income in 2014 from his corporation was $725,243, and of that amount, the portion attributable to medical legal work was $324,602.50.

Defense counsel argued, based on Dr. Borow's rate of $400 per hour for medical legal service, and his total medical legal income of $324,602.50, that Dr. Borow had spent 811 hours performing expert legal work ($324,602.50 ÷ $400) during the relevant time period. This broke down to sixteen hours per week (811 hours per year ÷ 48 hours per

week), or 33.12% of his professional time (48 hours per week x 51 weeks of work per year = 2,448 total hours worked, of which 811 hours is 33.12%).

Ms. Streaker's counsel, on the other hand, argued that Dr. Borow's handwritten notes from his trial deposition revealed that his medical legal income included $130,177 in payments for initial case reviews and cancellations (cases for which Dr. Borow was paid but didn't have to appear at trial or deposition because the case settled or otherwise resolved). That income, counsel argued, should be subtracted from the total, leaving $194,425.50 in medical legal income ($324,602.50 - $130,177 = $194,425.50) from 486.06 hours in 2014 of work directly involving testimony in personal injury actions. ($194,425 ÷ $400 per hour = 486.06), or 10 hours per week (486.06 ÷ 48 = 10.13), which is less than 20% of his professional time.

Ms. Streaker quarrels on appeal with the defense's "money-based analysis," and we recognize that the statute doesn't measure "activity" in terms of income. The statute doesn't define "activity" for these purposes in terms of time either, but the Court of Appeals cases interpreting the Twenty Percent Rule have. *See Waldt*, 411 Md. at 221-31; *Witte*, 369 Md. at 525-36. The problem with Ms. Streaker's calculation, though, is that her expert didn't produce time records—*both sides* had to back into their estimates of Dr. Borow's activity using income as a proxy, along with assumptions about Dr. Borow's hourly rate and the hours he spends working each week. And the income records the court did have contained holes: there was no way to tell with certainty what Dr. Borow's actual income from his medical legal work was because he failed to produce at least one 1099 where he was paid for work directly involved in testimony in a personal injury claim–*the very claim*

13

*for which he was testifying*—and might have omitted others. Moreover, the court expressed skepticism about Dr. Borow's record keeping. Dr. Borow knew the Twenty Percent Rule and had testified numerous times in Maryland, yet failed to produce evidence that persuaded the court that he met the Twenty Percent Rule (and his resistance to discovery didn't help his cause). The state of the record left the court to decide the inputs to the Twenty Percent Rule formula from the record it had, and after finding Dr. Borow not to be credible in this regard, the court found that his professional activity that directly involved testimony in personal injury claims exceeded twenty percent of his professional time.

We don't mean to suggest that experts need to maintain compulsive, tenth-of-an-hour timesheets, as lawyers and certain other professionals often do, to satisfy the Twenty Percent Rule, nor to require any particular form or quantum of proof. But Dr. Borow's approach here would, if it had worked, circumvent the Twenty Percent Rule, and more to the point, the statutory purpose underlying it. *Cf. Zorzit v. Comptroller*, 225 Md. App. 158, 175-80 (2015) (Comptroller could calculate tax liability from revenue estimates where the taxpayer actively refused to keep records.). The trial court can, and must, make the Twenty Percent Rule calculation from the record before it, and an expert who leaves uncertainty about the nature and extent of his activities directly involving testimony in personal injury claims risks a finding that he's not qualified. In this case, the circuit court was well within its discretion to find that the defendant's "version or analysis" was a "much more accurate [account] of the testimony" concerning Dr. Borow's activities than Ms. Streaker's version, and then to exclude Dr. Borow from testifying.

**B.     The Trial Court Correctly Granted Summary Judgment.**

14

Although we review *de novo* a decision of a circuit court granting summary judgment, *Harford County v. Saks Fifth Avenue Distribution Co.*, 399 Md. 73, 82 (2007), the issue is simpler here. Ms. Streaker's challenge to the court's summary judgment decision depends on the success of her challenge to Dr. Borow's exclusion—she agrees, as she must, that if her challenge to that decision fails, as it has, she is without an expert to testify on the standard of care, and the defense was entitled to summary judgment. *See Karl v. Davis*, 100 Md. App 42, 51 (1994) ("Except in cases where the medical negligence alleged is of such gross and obvious nature that a layman can comprehend the breach of care, the standard of care and breach thereof must be shown by expert testimony.") (internal citations omitted)).

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**