*Martin Reiss v. American Radiology Services, LLC, et al.*, No. 1570, Sept. Term 2017. Opinion by Arthur, J.

**MEDICAL MALPRACTICE – DEFENSE OF NON-PARTY MEDICAL NEGLIGENCE**

Maryland courts have previously recognized the defense of non-party medical negligence in medical malpractice cases. A defendant in a medical malpractice case generally may introduce evidence of a non-party's medical negligence to prove: that the defendant was not negligent or that his or her negligence did not cause the plaintiff's injury; or that a non-party's negligent acts or omissions were a superseding cause of the plaintiff's injury.

Ordinarily, a defendant cannot generate a triable issue of fact on non-party medical negligence without suitable expert testimony, to a reasonable degree of medical probability, that the non-party breached the applicable standard of care. In this case, the defendants did not produce any expert testimony, to a reasonable degree of medical probability, that certain non-party physicians breached the standard of care. The circuit court erred in submitting the question of non-party medical negligence to the jury.

**REVERSIBLE ERROR – INCLUSION OF QUESTION ON VERDICT SHEET**

Under the circumstances of this case, the erroneous inclusion of question on the verdict sheet asking whether the negligence of non-party physicians contributed to the plaintiff's injuries was prejudicial to the plaintiff. Even though the jury found that the defendants were not negligent, the record revealed that the jurors were obviously confused by the verdict sheet. This Court could not rule out the strong possibility that, in finding that the defendants were not negligent, the jurors were improperly influenced by the unfounded assertions that non-party physicians were negligent.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1570

September Term, 2017
_____

MARTIN REISS

V.

AMERICAN RADIOLOGY SERVICES, LLC,
ET AL.
_____

Graeff,
Arthur,
Harrell, Glenn T., Jr.
     (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Arthur, J.
_____

Filed:  June 26, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case concerns the defense of non-party negligence to a claim of medical malpractice. *See generally Copsey v. Park*, 453 Md. 141, 156-57 (2017) (holding that a defendant healthcare provider could introduce evidence of a non-party's medical negligence to prove "that he was not negligent and that if he were negligent, the negligent omissions of the other three subsequent treating physicians were intervening and superseding causes of the harm to the patient"); *Martinez ex rel. Fielding v. Johns Hopkins Hosp.*, 212 Md. App. 634, 661-66 (2013) (holding that a defendant healthcare provider was entitled to introduce evidence of a non-party's medical negligence to prove that the defendant was not negligent and that the non-party's negligence was the sole cause of the plaintiff's injuries).

This case specifically concerns whether a circuit court erred in submitting the issue of non-party negligence to the jury when the defendants did not produce an expert to opine, to a reasonable degree of medical probability, that a non-party healthcare provider had breached the standard of care. We hold that the court erred in submitting the issue of non-party negligence to the jury, because the defendants did not generate a triable question of fact on that subject.

**BACKGROUND**

In August 2011 Martin Reiss was diagnosed with renal cell carcinoma and an enlarged lymph node near the diseased kidney. Julio Davalos, M.D., a urological surgeon from Chesapeake Urology Associates, surgically removed Mr. Reiss's kidney, but did not remove the enlarged lymph node, as he had originally planned to do. The evidence suggests that Dr. Davalos opted not to remove the lymph node because of its proximity to

the inferior vena cava, "a large blood vessel responsible for transporting deoxygenated blood from the lower extremities and abdomen back to the right atrium of the heart." William D. Tucker & Bracken Burns, *Inferior Vena Cava*, NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION (Apr. 3, 2019), https://www.ncbi.nlm.nih.gov/books/NBK482353/.

After the surgery, Mr. Reiss came under the care of Russell DeLuca, M.D., an oncologist. Dr. DeLuca assumed that the enlarged lymph node was cancerous, but he believed that it could not be "resected" (i.e., removed) because of its proximity to the inferior vena cava. To treat the enlarged lymph node, Dr. DeLuca prescribed Sutent, a chemotherapy drug, in September 2011. When the node began to shrink in reaction to Sutent, Dr. DeLuca knew that it was cancerous.

In the course of treating Mr. Reiss, Dr. DeLuca ordered periodic CT scans of the area near the enlarged lymph node. A few months after the surgery, on December 2, 2011, appellee Victor Bracey, M.D., a radiologist with appellee American Radiology Services, interpreted one of those CT scans and compared it to a CT scan from September 9, 2011. Dr. Bracey noted the new scan showed no "lymphadenopathy" or disease of the lymph node, because it measured only .8 centimeters. (It had previously measured 2.4 centimeters.) In his report, Dr. Bracey noted that the scan was "suboptimally evaluated," by which he meant that it was difficult to interpret the scan because of the lack of intravenous or "IV" contrast – an injection of dye that enhances the clarity of the CT images.

Between 2012 and 2014, Dr. Bracey interpreted three additional CT scans of Mr.

2

Reiss's lymph node, each time noting that there was no lymphadenopathy. On each occasion, Dr. Bracey observed that the scan was "suboptimally evaluated" because of the lack of IV contrast.

Appellee Sung Kee Ahn, M.D., of American Radiology interpreted one CT scan without IV contrast on March 21, 2012. Like Dr. Bracey, Dr. Sung Kee Ahn reported no lymphadenopathy.

On September 9, 2015, Elizabeth Kim, M.D., a radiologist, interpreted a CT scan without contrast. Dr. Kim's findings alerted Dr. DeLuca that, although Dr. Bracey and Dr. Sung Kee Ahn had not reported lymphadenopathy from 2011 through 2014, there was an enlarged "soft tissue density" in the vicinity of the lymph node. Dr. Kim wrote that the "soft tissue density," which could indicate an enlarged or diseased lymph node, was "somewhat inseparable from the inferior vena cava." She added that the "soft tissue density" had "increased in size" since December 2, 2011, when Dr. Bracey reviewed an earlier CT scan.

After Dr. Kim reported her findings in 2015, a biopsy of Mr. Reiss's lymph node confirmed that it was cancerous. Additional studies suggested that because of the proximity of the enlarged node to the inferior vena cava, surgical removal of the node was not an option.

On May 10, 2016, Mr. Reiss filed a medical malpractice claim. As defendants, he named: Dr. Davalos, the surgeon who removed cancerous kidney, but not the lymph node, in 2011; Dr. Davalos's medical practice, Chesapeake Urology; Dr. Bracey and Dr. Sung Kee Ahn, the radiologists who reviewed the CT scans of his lymph node between

3

2011 and 2014 and reported no lymphadenopathy; and American Radiology, the medical practice that employed Dr. Bracey and Dr. Sung Kee Ahn. The premise of the complaint was that the cancerous lymph node could (and should) have been removed in or after 2011, but that it had now become inoperable, allegedly because of the defendants' medical negligence. In brief, Mr. Reiss alleged that Dr. Davalos breached the standard of care by failing to remove the lymph node in 2011 and that Drs. Bracey and Sung Kee Ahn breached the standard of care by failing to alert Dr. DeLuca to the alleged growth of the diseased lymph node when it could still be safely removed.

Before trial, Mr. Reiss dismissed his claims against Dr. Davalos and Chesapeake Urology. Hence, at trial, the sole defendants were Dr. Bracey, Dr. Sung Kee Ahn, and American Radiology. We shall refer to those parties, collectively, as "the radiologists."

The radiologists argued that their interpretations of Mr. Reiss's non-contrast CT scans were reasonable, appropriate, and within the standard of care. They contended that the CT scans did not show lymphadenopathy, because the lymph node was less than one centimeter in size when they viewed it; that they accurately reported that the lymph node was not abnormally enlarged; and that they warned Dr. DeLuca that the non-contrast CT scan was suboptimal and therefore more difficult for them to review.

At trial, Mr. Reiss called Paul Collier, M.D., an expert vascular surgeon, to establish that Mr. Reiss's lymph node could have been safely removed or resected at any time before 2015. Similarly, the radiologists' expert vascular surgeon, Dr. James Black, testified that the lymph node "could have been" removed in 2011. In fact, Dr. Black testified that, even as of the date of trial in the summer of 2017, he could safely remove

4

the lymph node.

Mr. Reiss also called Barry Singer, M.D., an expert oncologist, to establish that Mr. Reiss's probability of survival would have been significantly enhanced had the lymph node been removed between 2011 and 2014, before it became (in his words) "presumably unresectable." In Dr. Singer's opinion, the "available treatment realities" for Mr. Reiss's cancerous lymph node would have been to remove the node between 2011 and 2014, because, he said, "you always want to remove cancer from the body." Had a biopsy shown that the cancer had returned between 2011 and 2014, the "preferred treatment course," according to Dr. Singer, would have been to "remove the lymph node." Dr. Singer testified, to a reasonable degree of medical probability, that, had a biopsy been performed on the lymph node before 2015, it would have shown renal cell cancer. Dr. Singer also testified, to a reasonable degree of probability, that, had the lymph node been removed between 2011 and 2014, it is more likely than not that Mr. Reiss would have been cured. On cross-examination, Dr. Singer testified that, at the time of the original diagnosis in 2011, all of Mr. Reiss's doctors knew that the lymph node was probably cancerous and that a reasonable oncologist would have known that the node probably contained cancer.

Mr. Reiss also called Dr. DeLuca, one of his treating oncologists, as a fact witness, to establish that the reports from Dr. Bracey and Dr. Sung Kee Ahn had led him to believe that the cancer in Mr. Reiss's lymph node was in remission. Dr. DeLuca testified that he discontinued chemotherapy and simply monitored Mr. Reiss's condition because he believed that the cancer was in remission. When asked why he did not order a biopsy

5

of the lymph node after being told that it had shrunken in size, Dr. DeLuca responded with a question: "What was I going to biopsy?" Had he been informed that the lymph node was allegedly increasing in size, Dr. DeLuca said that he would have offered some "alternative treatment," such as another chemotherapy drug, and would have consulted with a surgeon.

On cross-examination, Dr. DeLuca testified that, after Mr. Reiss's surgery in 2011, he initially assumed that because the lymph node was enlarged, it contained cancer. When the lymph node shrunk in response to the chemotherapy drug, Sutent, Dr. DeLuca was "confident" that the node contained cancer, but he admitted that Sutent does not cure cancer. Dr. DeLuca also admitted that he did not refer Mr. Reiss's case to the tumor board of medical professionals to discuss whether surgery was an option. On both direct and cross-examination, Dr. DeLuca said that he had operated under the assumption that the lymph node was not resectable, because the surgeon, Dr. Davalos, had told him so.

On cross-examination, Dr. DeLuca also testified about his decision to order scans without IV contrast. The doctor explained that he ordered scans without contrast in order to avoid potential long-term toxicities to Mr. Reiss's one remaining kidney. He acknowledged that it is more difficult to see a patient's vasculature in a CT scan without IV contrast than in a scan with IV contrast.

The jury heard the testimony of a number of other physicians, including the deposition testimony of Dr. Eugene Ahn, Mr. Reiss's current treating oncologist. In response to questioning by counsel for the radiologists, Dr. Eugene Ahn testified that, when he began treating Mr. Reiss in October 2015, he prescribed Opdivo, a

6

chemotherapy drug, to treat his renal cell carcinoma, but did not refer him for surgery to resect the lymph node.  Dr. Eugene Ahn explained that his colleague, a general surgeon, had informed him that surgery would not be in Mr. Reiss's best interest, because there was no discernible plane of denotation between the lymph node and the inferior vena cava.  The doctor explained that, in his judgment, the risk of surgery was too high in relation to any expected improvement in Mr. Reiss's overall likelihood of survival.

In the course of the trial, no expert witness testified, to a reasonable degree of medical probability, that the standard of care required the urological surgeon, Dr. Davalos, to remove the enlarged lymph node when he removed Mr. Reiss's cancerous kidney in 2011.  Nor did any expert witness testify, to a reasonable degree of medical probability, that the standard of care required the oncologists, Dr. DeLuca and Dr. Eugene Ahn, to refer Mr. Reiss to a surgeon to remove the potentially cancerous lymph node or to order a biopsy of the lymph node.[1]

During closing argument, the radiologists argued, among other things, that Mr. Reiss's injuries resulted from the conduct of the non-party physicians (Dr. Davalos, Dr. DeLuca, and Dr. Eugene Ahn), and not from any acts or omissions by the radiologists themselves.  They pointed out that Dr. Davalos had decided not to remove the lymph node when he removed Mr. Reiss's kidney in 2011.  They also pointed out that, although Dr. DeLuca had assumed that the lymph node was cancerous, he failed to consult a

---

[1] The radiologists may have intended to elicit at least some testimony from Dr. Collier, Mr. Reiss's expert vascular surgeon, about a non-party's breach of the standard of care, but the court sustained an objection to that line of questioning.

7

vascular surgeon about whether it could be removed and failed to order a biopsy. The radiologists observed that when Mr. Reiss came under the care of Dr. Eugene Ahn, his second oncologist, the doctor did not refer Mr. Reiss to a vascular surgeon even though the lymph node had increased in size since 2011. Finally, the radiologists pointed to Mr. Reiss's expert oncologist, Dr. Singer, who opined that had a biopsy done at any time between 2011 and 2014, it would have shown cancer in the lymph node.[2]

At the end of trial, the court and the parties discussed a verdict sheet. One issue in the discussions was whether the verdict sheet should ask whether the non-party physicians (Drs. Davalos, DeLuca, or Eugene Ahn) had breached the standard of care and whether any such breach was a substantial factor in causing Mr. Reiss's injury. Over Mr. Reiss's objection, the court included such a question.

In total, the verdict sheet contained seven questions. Questions 1 through 4 asked whether the radiologists, Dr. Bracey and Dr. Sung Kee Ahn, had breached the standard of care and whether their breach, if any, was a cause of Mr. Reiss's injury. The verdict sheet instructed the jurors to stop and summon the clerk if they found that neither of the radiologists had breached the standard of care or if they found that the breach, if any, was

---

[2] In closing, the radiologists also argued that Dr. DeLuca did not order CT scans with IV contrast, despite a defense expert's testimony that a CT scan with contrast is the "gold standard." On appeal, however, the radiologists do not argue that Dr. DeLuca breached the standard of care by not ordering CT scans with IV contrast. Nor could they. *See*, *e.g*., *Johns Hopkins Hosp. v. Genda*, 255 Md. 616, 622 (1969) (stating that the standard of care "'is not the highest degree of care and skill known to the profession, but that reasonable degree of care and skill which physicians and surgeons ordinarily exercise in the treatment of their patients'") (quoting *State ex rel. Janney v. Housekeeper*, 70 Md. 162, 166 (1889)).

not a cause of Mr. Reiss's injury.

Question 5, which the jurors were instructed to answer only if they found that one or both of the radiologists were otherwise liable, asked whether Mr. Reiss was contributorily negligent. If the jurors found that Mr. Reiss was contributorily negligent, the verdict sheet instructed them to stop and summon the clerk. If they found that he was not contributorily negligent, the verdict sheet instructed them to proceed to Question 6.

The focus of this appeal is Question 6, which the jurors were instructed to answer only if they had found that one or both of the radiologists breached the standard of care, that the breach (or breaches) was (or were) a cause of Mr. Reiss's injury, and that Mr. Reiss was not contributorily negligent. Question 6 asked whether "a negligent act or acts" by the non-party physicians, Dr. Davalos, Dr. DeLuca, or Dr. Eugene Ahn, had been "a substantial factor" in causing Mr. Reiss's injuries.

Regardless of their answer to Question 6, the jurors were instructed to proceed to Question 7, which asked them to compute Mr. Reiss's economic and noneconomic damages.[3]

The jurors did not follow the instructions on the verdict sheet. Although they found that neither Dr. Bracey nor Dr. Sung Kee Ahn had breached the standard of care, they nonetheless proceeded to determine that Mr. Reiss was not contributorily negligent.

_____

[3] The verdict sheet is replicated in Appendix A to this opinion. The verdict sheet did not tell the jurors what they were supposed to do if they found that Dr. Bracey or Dr. Sung Kee Ahn had breached the standard of care and that the breach was a cause of Mr. Reiss's injuries, but also found that "a negligent act or acts" by Dr. Davalos, Dr. DeLuca, or Dr. Eugene Ahn had been "a substantial factor" in causing Mr. Reiss's injuries.

9

Then they proceeded to decide that "a negligent act or acts" by Dr. Davalos, Dr. DeLuca, or Dr. Eugene Ahn had been "a substantial factor" in causing Mr. Reiss's injuries. They ended by awarding Mr. Reiss over $4.8 million in noneconomic damages even though the actual defendants in the case had been found liable for nothing.[4]

After the jurors returned this aberrant decision, the court instructed them that they had reached an inconsistent verdict. The court explained that because the jurors had found that neither Dr. Bracey nor Dr. Sung Kee Ahn had breached the standard of care, it was unnecessary for them to consider the remaining questions. Over Mr. Reiss's objection, the court sent the jurors back to deliberate, with another copy of the same verdict sheet. At that time, Mr. Reiss's counsel commented that the court had submitted Question 6 over his objection and that the jurors had answered it in the affirmative, which, he said, "is probably why" they answered the questions about the defendants' breach in the negative.

The jury deliberated further and eventually returned a second verdict in which it found (again) that neither Dr. Bracey nor Dr. Sung Kee Ahn breached the standard of care. This time, however, the jury followed the instructions and answered no additional questions, including the question about the "negligent act or acts" by Mr. Reiss's other physicians and the amount of damages.[5]

---

[4] The verdict sheet, as initially completed by the jury, appears in Appendix B to this opinion.

[5] The second and final verdict sheet, as completed by the jury, appears in Appendix C to this opinion.

10

Mr. Reiss moved for a new trial, complaining principally about the verdict sheet. The court denied his motion, and he took this timely appeal.

QUESTION PRESENTED

Mr. Reiss presents one question for review: "Did the trial judge err in including in the verdict form a question asking whether the negligent acts of non-party physicians harmed the Plaintiff where there had been no expert testimony that those non-party physicians deviated from any standard of care or that any such deviations caused harm?"

For the reasons explained below, we conclude that the trial court committed reversible error.

ANALYSIS

A.      The Defense of Non-Party Medical Negligence

In two recent cases, Maryland courts have recognized the defense of a non-party's medical negligence in a medical malpractice case. *See Copsey v. Park*, 453 Md. 141 (2017); *Martinez ex rel. Fielding v. Johns Hopkins Hosp*., 212 Md. App. 634 (2013). Because this case involves the method by which a defendant may prove a non-party's medical negligence, we begin with a discussion of those cases.

In *Martinez ex rel. Fielding v. Johns Hopkins Hosp*., 212 Md. App. at 639, a child's parents filed suit, alleging that by negligently failing to perform a timely Caesarean section, the hospital had caused the child to suffer birth injuries, including cerebral palsy. In its defense, the hospital argued that the child's injuries had occurred before the mother ever entered the hospital, when she was under the care of a negligent

11

midwife. According to the hospital, the midwife was "solely responsible" for the injuries. *Id.* at 644.

Before trial, the circuit court granted the parents' motion in limine to exclude evidence, including expert testimony, about the standard of care for midwives and the midwife's breach of the standard of care in treating the mother. *Id.* at 647-48. A jury found in favor of the parents, and the hospital appealed. We reversed. *Id.* at 640.

In reaching that decision, we reasoned that the evidence of the standard of care for midwives and of the midwife's breach of the standard of care in treating the mother was relevant to the hospital's defenses that it was not negligent and that it was not a cause of the injury. *Id.* at 661-62; *see also id.* at 661 (stating that evidence of standard of care for midwives and midwife's breach was relevant to hospital's defense that the midwife's negligence was sole cause of child's injury and, therefore, that hospital did not cause injury); *id.* at 664 (stating that "evidence of both negligence and causation attributable to a non-party is relevant where a defendant asserts a complete denial of liability"); *id.* at 665 (*citing Archambault v. Soneco/Northeastern, Inc.*, 287 Conn. 20, 32-33, 946 A.2d 839, 849 (2008), for the proposition that "evidence of negligence of a non-party is relevant to a defendant's complete denial of liability"). Accordingly, we held that the circuit court erred in excluding evidence of the standard of care applicable to midwives and of the midwife's breach of the standard of care in treating the mother. *Id.* at 658.

In excluding the evidence of the standard of care for midwives and of the midwife's breach, the circuit court had reasoned that the midwife's breach would not excuse the hospital's negligence. We rejected the court's reasoning, because it presumed

12

that the hospital was negligent. *Id.* at 662. The hospital's defense, however, was that it was not negligent at all, and that it did not cause the injury. *Id.* Because the hospital sought to prove that the midwife's negligence was the sole cause of the child's injuries, it was entitled to introduce evidence of the standard of care that applied to the midwife and of the midwife's breach in treating the mother. *Id.* Because the trial court prevented the hospital from introducing that evidence, the jury "was given a materially incomplete picture of the facts, which denied the Hospital a fair trial." *Id.* at 666.

A few years later, in *Copsey v. Park*, 453 Md. 141 (2017), the Court of Appeals considered a slightly different aspect of the defense of non-party medical negligence. In that case, a decedent's widow brought suit against a radiologist and an array of subsequent treating physicians, alleging that they had negligently failed to diagnose the medical conditions that led to her late husband's fatal stroke. *Id.* at 152. The radiologist, Dr. Park, defended on the ground that he had not been negligent. In addition, he argued that the medical negligence of the subsequent treating physicians was a superseding cause of the plaintiff's injuries. *Id.* at 153.

Before trial, the plaintiff dismissed her claims against all of the subsequent treating physicians, leaving only her claim against Dr. Park and his employer. *Id.* at 152-53. The circuit court denied the plaintiff's motion in limine to prevent Dr. Park from introducing evidence that the negligence of the subsequent treating physicians was a superseding cause. *Id.* at 153.

At trial, the evidence showed that, in the days after Dr. Park was alleged to have negligently failed to diagnose occlusions (or blockages) in the decedent's vertebral

13

arteries (in the neck), the decedent's condition worsened significantly. He exhibited symptoms of a stroke, and an MRI suggested an acute infarction (an obstruction of the blood supply) in the brain. *Id*. at 151. A number of experts, including one of the plaintiff's experts, testified that the subsequent treating physicians had breached the standard of care by failing to communicate with one another and with the patient himself about the disturbing results of the new MRI scan. *Id*. at 154-55. As a consequence of the negligence of the subsequent treating physicians, the decedent did not receive the emergency treatment that, one expert said, would have saved his life. *Id*. Instead, he was allowed to return home, where, unaware of his condition, he suffered a stroke. *Id.* The jury found that Dr. Park did not breach the standard of care. *Id.* at 156.

On certiorari from an opinion in which this Court had affirmed the judgment (*Copsey v. Park*, 228 Md. App. 107 (2016)), the Court of Appeals held that a physician could introduce evidence of a non-party's medical negligence to prove "that he was not negligent and that if he were negligent, the negligent omissions of the other three subsequent treating physicians were intervening and superseding causes of the harm to the patient." *Copsey v. Park*, 453 Md. at 157; *see also id.* at 148 (holding that "evidence of non-party negligence was relevant and necessary in providing Dr. Park a fair trial as it tended to show he was not negligent"); *id.* at 156 (holding that "a defendant generally denying liability may present evidence of a non-party's negligence and causation as an affirmative defense"); *id.* at 173 (stating that "Dr. Park was entitled to present evidence of the subsequent negligence of other individuals in his own defense"). Accordingly, the Court affirmed the judgment in Dr. Park's favor.

14

In reaching its decision, the *Copsey* Court rejected the plaintiff's contention that it should distinguish *Martinez* on the ground that the non-party negligence in *Martinez* preceded the hospital's alleged negligence, while the non-party negligence in *Copsey* came after Dr. Park's alleged negligence. *Id.* at 161. The Court reasoned that, "in addition to claiming that the other treating physicians were superseding causes, Dr. Park also completely denied any liability." *Id.* As in *Martinez*, therefore, evidence of a non-party's negligence was admissible, "'because without the evidence 'the jury [would have been] given a materially incomplete picture of the facts, which [would have] denied [Dr. Park] a fair trial.'" *Id.* at 161-62 (quoting *Martinez ex rel. Fielding*, 212 Md. App. at 666).

In summary, under both *Martinez* and *Copsey*, defendants generally may introduce evidence of a non-party's medical negligence to prove that they were not negligent or that their negligence did not cause the plaintiff's injuries. In addition, under *Copsey*, defendants generally may introduce evidence of a non-party's medical negligence to prove that the non-party's acts or omissions were a superseding cause that cut off the chain of causation running from the defendants' negligence, if any.

**B.     The Appeal is Not Moot**

As an initial matter, the radiologists argue that the jury did not have to reach the issue of non-party negligence in this case, because it found that they did not breach the standard of care. Therefore, the radiologists conclude that it is unnecessary for us to decide whether the trial court erred in including the question regarding non-party negligence on the verdict sheet. In the radiologists' view, that question is moot.

15

Although the radiologists' argument is superficially appealing, a variant of it has been rejected both by this Court and the Court of Appeals in *Copsey v. Park*:

> While the respondents [Dr. Park and his practice] argue that the issue of superseding cause is moot because the jury decided Dr. Park was not negligent as he did not breach the standard of care (never deciding whether the other doctors' negligence constituted a superseding cause), we agree with the intermediate appellate court that this was not a moot issue. The petitioners argue the alleged negligence of subsequent treating doctors' omissions could have contaminated and prejudiced the jury's view of whether Dr. Park breached the standard of care, which was an issue the jury actually decided.

*Copsey v. Park*, 453 Md. at 167 n.7 (citation omitted).

Similarly, in this case, the alleged negligence of the other physicians could have affected the jurors' view of whether the radiologists breached the standard of care. Indeed, we know that the jurors considered the alleged negligence of the other physicians because of how they initially completed the verdict sheet. Consequently, we reject the contention that we need not decide whether the trial court erred in including a question regarding non-party negligence on the verdict sheet.

## C.     Proof of Non-Party Medical Negligence

In this appeal, we are called upon to review the contents of a verdict sheet. In general, "the decision to use a particular verdict sheet 'will not be reversed absent abuse of discretion.'" *Consol. Waste Indus., Inc. v. Standard Equip. Co.*, 421 Md. 210, 220 (2011) (quoting *Applied Indus. Techs. v. Ludemann*, 148 Md. App. 272, 287 (2002)); *accord S & S Oil, Inc. v. Jackson*, 428 Md. 621, 629 (2012). "Under the abuse of discretion standard," however, "this Court will overturn a trial judge's decision to use a particular verdict sheet if we find both that the trial judge committed an error and that the

16

error prejudiced [the appellant's] case." *S & S Oil, Inc. v. Jackson*, 428 Md. at 629. Furthermore, "a 'court's discretion is always tempered by the requirement that the court correctly apply the law applicable to the case.'" *Schlotzhauer v. Morton*, 224 Md. App. 72, 84 (2015) (quoting *Arrington v. State*, 411 Md. 524, 552 (2009)), *aff'd*, 449 Md. 217 (2016).

The specific issue in this case is whether the court erred or abused its discretion in submitting a verdict sheet that asked the jury to decide a question concerning non-party medical negligence. A court cannot submit an issue to a jury unless there is some admissible evidence to support it. *See, e.g.*, *Barbosa v. Osbourne*, 237 Md. App. 1, 10, *cert. denied*, 460 Md. 20 (2018). Therefore, the central issue in this case is whether there was any admissible evidence of non-party medical negligence in the record.

In general, to prove medical negligence, a party must establish (1) the applicable standard of care, (2) a breach of the standard of care, and (3) harm resulting from the breach. *See*, *e.g.*, *Armacost v. Davis*, 462 Md. 504, 526 (2019); *Karl v. Davis*, 100 Md. App. 42, 51 (1994).

When a person alleges negligence by a professional, such as a physician, "expert testimony is generally necessary to establish the requisite standard of care owed[.]" *Schultz v. Bank of Am., N.A.*, 413 Md. 15, 28 (2010) (citing *Rodriguez v. Clarke*, 400 Md. 39, 71 (2007)); *accord Karl v. Davis*, 100 Md. App. 42, 51 (1994). "This is because professional standards are often 'beyond the ken of the average lay[person],' such that the expert's testimony is necessary to elucidate the relevant standard for the trier of fact." *Id.* (quoting *Bean v. Dep't of Health*, 406 Md. 419, 432 (2008)); *accord Armacost v. Davis*,

462 Md. at 527 (stating that "[b]ecause the duty of care owed by a professional is based on the special expertise of the professional, its contours may not be a matter of common knowledge"); *Jacobs v. Flynn*, 131 Md. App. 342, 354 (2000) (stating that "[b]ecause of the complex nature of medical malpractice cases, expert testimony is normally required to establish breach of the standard of care"); *Brown v. Meda*, 74 Md. App. 331, 343 (1988) (stating that, "in a case involving complex medical procedures or the exercise of professional skill and judgment, a jury is not qualified to determine whether there was unskilled or negligent treatment without the aid of expert testimony"), *aff'd*, 318 Md. 418 (1990). "The only exceptions are those extraordinarily rare medical malpractice cases in which the defendant's act or omission is such that ordinary lay people would be able to determine that the act or omission was a breach of the standard of care, such as amputating the wrong leg." *DeMuth v. Strong*, 205 Md. App. 521, 539 (2012).

An "expert opinion need not be expressed with absolute certainty[,]" but "[w]e have required expert opinions to be established within a reasonable degree of probability." *Karl v. Davis*, 100 Md. App. at 51-52 (collecting authorities); *accord Retina Group of Washington, P.C. v. Crosetto*, 237 Md. App. 150, 175, *cert. denied*, 460 Md. 11 (2018); *Jacobs v. Flynn*, 131 Md. App. at 354. "'[T]hese wooden phrases are required to make sure that the expert's opinion is more than speculation or conjecture.'" *Karl v. Davis*, 100 Md. App. at 52 (quoting Joseph F. Murphy, Jr., *Maryland Evidence Handbook* § 1404 (2d ed. 1993)); *accord Retina Group of Washington, P.C. v. Crosetto*, 237 Md. App. at 175-76. For that reason, "expert testimony based upon anything less than a reasonable degree of probability may be properly excluded." *Karl v. Davis*, 100

18

Md. App. at 52-53; *accord Hines v. State*, 58 Md. App. 637, 670 (1984) (stating that "[i]f an expert witness cannot, will not or does not render his [or her] opinion to a reasonable degree of probability within the field of his [or her] expertise, the opinion may be excluded from evidence"); *see also Ramsey v. Physicians Mem'l Hosp.*, 36 Md. App. 42, 49 (1977) (holding that plaintiffs did not generate triable issue of medical negligence because expert would not express a "definite opinion" about whether defendant had breached the standard of care).

In *Karl v. Davis*, 100 Md. App. at 53, the plaintiffs attempted to establish a prima facie case of a physician's breach of the standard of care by relying solely on a discovery deposition, in which their expert failed to state that he was expressing his opinions to a reasonable degree of medical probability and in most instances said nothing about what standard he was employing. Under the health claims arbitration procedures that applied at the time, an arbitration panel entered judgment in the defendant's favor, because of the defects in the expert's testimony. *Id.* at 47. On appeal, this Court held that the panel properly disregarded the expert's opinions because of his failure to articulate that he was employing the correct standard. *Id.* at 53; *see also id.* at 48 n.3. Because the expert's deposition was the only expert testimony offered by the plaintiff, this Court upheld the panel's conclusion that the plaintiff had failed to establish a breach of the standard of care. *Id.* at 53.[6]

---

[6] Under the procedures that applied at the time, the plaintiffs filed a notice of rejection of the arbitration decision and moved to nullify it. *Id.* at 47. The circuit court dismissed the plaintiffs' action on the ground that they had failed to arbitrate in good

More recently, in *Retina Group of Washington, P.C. v. Crosetto*, 237 Md. App. at 160, the plaintiffs' sole liability expert had criticized one of the physicians who was employed by the defendant medical practice, stating that the lead plaintiff's intraocular pressure "was definitely something that should have been treated by . . . 98 percent of specialists" before eye surgery. *Id.* Nonetheless, the expert did not offer an opinion to a reasonable degree of medical probability that the physician breached the standard of care by failing to prescribe medication to lower the patient's intraocular pressure before surgery. *Id.* We held that the expert's testimony was insufficient to permit a finding by reasonable jurors that the physician had breached the standard of care. *Id.* at 176. Without testimony to a reasonable degree of medical probability that the physician had breached the standard of care, the expert's critical comments alone were not enough to generate a triable issue of fact as to the physician's medical negligence. *See id.*

In light of *Karl v. Davis* and *Retina Group of Washington, P.C. v. Crosetto*, we hold that the radiologists did not generate a triable issue of fact as to the negligence of Dr. Davalos, Dr. DeLuca, or Dr. Eugene Ahn. Although the radiologists can point to a number of arguably critical comments about the care that those physicians rendered, no expert witness testified, to a reasonable degree of medical probability, that Dr. Davalos breached the standard of care by opting not to remove Mr. Reiss's lymph node in 2011; no expert witness testified, to a reasonable degree of medical probability, that Dr. DeLuca

---

faith. *Id.* Although this Court agreed that the plaintiffs had failed to generate a triable issue of fact because of their failure to adduce expert testimony to a reasonable degree of probability, it disagreed that they had failed to arbitrate in good faith. *Id.* at 59.

breached the standard of care between 2011 and 2014 by not referring Mr. Reiss to surgery and not ordering a biopsy on the lymph node; and no expert witness testified, to a reasonable degree of medical probability, that Dr. Eugene Ahn breached the standard of care in 2015 by not referring Mr. Reiss to surgery. In these circumstances, the jury had no basis to conclude that Dr. Davalos, Dr. DeLuca, or Dr. Eugene Ahn committed a negligent act or acts. The circuit court, therefore, erred in including a question about their alleged negligence on the verdict sheet.[7]

In arguing that they established a sufficient factual predicate for the jury to conclude that Dr. Davalos breached the standard of care in not removing the lymph node in 2011, the radiologists rely on the testimony of Mr. Reiss's expert vascular surgeon, Dr. Collier, who testified that the lymph node could have been safely removed or resected at any time before 2015. This is not testimony, to a reasonable degree of medical probability, that the standard of care required Dr. Davalos to remove the node. It is certainly not testimony that Dr. Davalos performed below the level of a reasonably competent practitioner when he apparently decided that the benefits of removing the lymph node were offset by the risk that the patient might die on the operating table if the surgeon inadvertently damaged the inferior vena cava. At most, Dr. Collier's testimony

---

[7] Mr. Reiss's expert oncologist, Dr. Singer, did testify, to a reasonable degree of medical probability, that, had a biopsy been performed on the lymph node before 2015, it would have shown renal cell cancer. In addition, Dr. Singer testified, to a reasonable degree of probability, that, had the lymph node been removed between 2011 and 2014, it is more likely than not that Mr. Reiss would have been cured. But those opinions, though expressed to the requisite degree of medical probability, are not opinions that anyone breached the standard of care by treating Mr. Reiss; they are opinions about what probably would have happened had Mr. Reiss received a different course of treatment.

21

evidenced a disagreement on a matter of professional judgment – not unlike the apparent disagreement between Dr. Collier, who thought that the lymph node was no longer resectable, and the radiologists' expert, Dr. Black, who thought that it was still resectable even as of the date of trial.

In arguing that they established a sufficient factual predicate for the jury to conclude that Mr. Reiss's oncologists (Dr. DeLuca and Dr. Eugene Ahn) breached the standard of care in not referring Mr. Reiss for surgery to remove the lymph node, the radiologists rely on two aspects of the expert testimony of Mr. Reiss's expert oncologist, Dr. Singer. First, they cite Dr. Singer's testimony that all of Mr. Reiss's doctors knew that the lymph node was probably cancerous and that a reasonable oncologist would have known that the node probably contained cancer. Second, they cite Dr. Singer's testimony that the "preferred treatment" for Mr. Reiss's cancerous lymph node would have been to remove the node between 2011 and 2014, because, in his words, "you always want to remove cancer from the body."

Dr. Singer's broad, general pronouncements, including his statements about the "preferred treatment," do not equal expert testimony, to a reasonable degree of medical probability, that the standard of care required Dr. DeLuca and Dr. Eugene Ahn to refer Mr. Reiss for surgery. *See Lane v. Calvert*, 215 Md. 457, 464 (1958) (holding that question about what expert himself would have done "did not go to the standard of the profession"); *Ramsey v. Physicians Mem'l Hosp.*, 36 Md. App. at 49 (holding that expert's statement about what he or she personally would have done in treating patient is not evidence of applicable standard of care). Furthermore, Dr. Singer's statements did

22

not address the specific circumstances that the oncologists confronted in their treatment of Mr. Reiss. For example, Dr. Singer did not address why Dr. DeLuca had a professional obligation to refer Mr. Reiss for surgery even though a surgeon (Dr. Davalos) had told him that the lymph node could not be safely removed, even though the lymph node shrunk in response to chemotherapy, and even though the CT scans led him believe that the cancer was in remission. Similarly, Dr. Singer did not address why Dr. Eugene Ahn had a professional obligation to refer Mr. Reiss for surgery even though his surgical colleague had informed him that surgery would not be in Mr. Reiss's best interest.[8]

Perhaps recognizing that they did not come forward with the type of expert testimony necessary to establish the breach of a professional standard of care, the radiologists argue that under *Copsey* and *Martinez* they do not need expert testimony at all. In their view, "*Copsey* and *Martinez* merely addressed the question of whether a malpractice defendant who denies liability may **in the event that the trier of fact finds**

---

[8] At various points, the radiologists suggest that Drs. Davalos, DeLuca, and Eugene Ahn should have referred Mr. Reiss to a vascular surgeon, who, presumably, would have been more skilled than a urological surgeon (like Dr. Davalos) or a general surgeon (like Dr. Eugene Ahn's colleague) to remove an enlarged lymph node that was in extremely close proximity to a major vein. Suffice it to say that the radiologists introduced no testimony establishing that the standard of care required Drs. Davalos, DeLuca, or Eugene Ahn to refer Mr. Reiss to a vascular surgeon; no testimony establishing that a urological surgeon like Dr. Davalos lacked the skill, experience, or training to competently assess the risks of removing Mr. Reiss's lymph node without consulting with a surgeon from another specialty; and no testimony establishing that oncologists like Drs. DeLuca and Eugene Ahn were prohibited from relying on the advice of a urological surgeon or a general surgeon who said that the lymph node could not be removed safely.

23

**that the defendant committed malpractice**, prove the **affirmative defense** that negligence of a non-party physician or medical provider was an intervening and superseding cause of the plaintiff's injury[,] absolving the defendant of liability." Brief at 16 (emphasis in original). The radiologists argue that they did not assert an affirmative defense that the negligence of the other physicians was a superseding cause, which cut off the chain of causation running from their own negligence; instead, they argue that they denied Mr. Reiss's allegations of negligence and set out to refute them. Because they would have the burden of persuasion on the issue of non-party negligence only if they were asserting an affirmative defense, the radiologists appear to argue that they are not bound by cases that discuss what a plaintiff must prove to establish a prima facie case of medical malpractice. The radiologists have misread *Copsey* and *Martinez*.

In *Copsey*, 453 Md. at 156-57, the Court of Appeals held that a physician could introduce evidence of a non-party's medical negligence to prove "that he was not negligent and that if he were negligent, the negligent omissions of the other three subsequent treating physicians were intervening and superseding causes of the harm to the patient." In discussing the question of superseding causation, the Court, on one occasion, referred briefly to the concept of an affirmative defense of non-party negligence. *See id.* at 156. On other occasions, however, the Court recognized that a defendant may defend against a claim of medical malpractice by using evidence of non-party negligence to dispute the plaintiff's evidence of negligence. *See*, *e.g.*, *id.* at 148 (holding "that evidence of non-party negligence was relevant and necessary in providing Dr. Park a fair trial as it tended to show he was not negligent"); *see also id.* at 174

24

(stating that "Dr. Park was entitled to show *both* that he was not negligent *and* that he did not cause Mr. Copsey's injury") (emphasis added); *id.* (concluding that "Dr. Park, who generally denied liability, was entitled to present evidence of the non-parties' negligence as it was relevant and necessary in providing him a fair trial").  In short, *Copsey* recognizes that, in the appropriate case, defendants may have the right to introduce evidence of non-party medical negligence *both* to defend against a claim of malpractice *and* to establish what the Court described as an affirmative defense of superseding causation.  *Id.* at 174.

*Martinez* is even clearer in establishing that a defendant may use evidence of non-party medical negligence not in connection with an affirmative defense of superseding causation, but as a means of disputing the plaintiff's proof of negligence and causation.  In *Martinez* the hospital did not argue that the midwife's negligence was a superseding cause that cut off the chain of causation running from its own negligence.  Rather, the hospital categorically denied any liability, and argued that it was not negligent and that the midwife's antecedent negligence was the sole cause of the injuries suffered by the child and his parents.  *Martinez ex rel. Fielding v. Johns Hopkins Hosp.*, 212 Md. App. at 661-62; *id*. at 644; *id.* at 664; *id.* at 665.  In fact, the midwife's negligence in *Martinez* could not have been a superseding cause of the injuries, because an intervening and superseding cause (by definition) occurs after the defendant's acts or omissions,[9] but the

_____

[9] *See*, *e.g.*, *Pittway Corp. v. Collins*, 409 Md. 218, 248 (2009) ("'[t]he defendant is liable where the intervening causes, acts, or conditions were set in motion by his *earlier*

25

midwife's negligence occurred before the hospital's acts or omissions.  The radiologists, therefore, are simply wrong in arguing that *Martinez* and *Copsey* apply only to an affirmative defense of superseding causation, on which the defendant has the burden of persuasion.

Still, although the defendants in *Copsey* and *Martinez* offered expert testimony to prove non-party medical negligence,[10] neither case expressly addresses whether expert testimony is required when the defendant is not attempting to establish an affirmative defense, but is attempting only to refute the plaintiff's allegations of negligence and causation by showing that a non-party bears the sole responsibility for causing the plaintiff's injuries.  Does it make a difference that defendants have no burden of persuasion when they are attempting to use a non-party's medical negligence to dispute a plaintiff's allegations of negligence and causation?

In our judgment, it does not.  We generally require expert testimony about a breach of a professional standard of care because the subject matter is beyond the understanding of ordinary lay jurors.  That subject matter does not become any more comprehensible to lay jurors merely because it is presented as a defense to a claim of malpractice, and not as the basis for a claim of malpractice.  Indeed, if defendants want to contest a plaintiff's allegations of medical negligence by showing that they themselves

---

negligence'") (quoting *Pennsylvania Steel Co. v. Wilkinson*, 107 Md. 574, 581 (1908)) (emphasis added).

[10] *Copsey v. Park*, 453 Md. at 154-55; *Martinez ex rel. Fielding v. Johns Hopkins*, *Hosp*., 212 Md. App. at 646-47; *id*. at 649-52.

26

adhered to the standard of care, they would typically need to call an expert, who would have to express his or her opinions to a reasonable degree of probability. It follows that if defendants want to contest a plaintiff's allegations of medical negligence with evidence of a non-party's medical negligence, they must call an expert, who must express his or her opinions to a reasonable degree of probability, unless the non-party's negligence is so obvious that ordinary lay people can determine that it was a breach of the standard of care.

In summary, in this case, the radiologists could not generate a defense of non-party medical negligence without suitable expert testimony, to a reasonable degree of medical probability, that the non-party breached the standard of care. The radiologists had no such testimony. Therefore, the circuit court erred in submitting the question of non-party medical negligence to the jury.[11]

We are convinced that the error was prejudicial. The jurors were obviously confused by this verdict sheet. In the initial answer to the questions on the verdict sheet, the jurors purported to award $4.8 million in damages even though they found that none of the actual defendants were negligent. In fact, the initial verdict sheet can be read as a finding that Dr. Davalos, Dr. DeLuca, or Dr. Eugene Ahn caused Mr. Reiss to suffer $4.8

---

[11] The court erred in submitting this particular question for another reason: in asking the jury whether "a negligent act or acts" by Dr. Davalos, Dr. DeLuca, or Dr. Eugene Ahn had been "a substantial factor" in causing Mr. Reiss's injuries, the court effectively presumed that one or more of the non-party physicians had committed "a negligent act or acts." Even if the radiologists had generated a triable question of fact on the issue of non-party negligence, it would have been for the jury to decide whether any of the non-party physicians had actually committed "a negligent act or acts."

million in damages – even though there was no admissible evidence that any of those doctors had breached the standard of care. The jurors could not have reasonably been expected to put that conclusion out of their minds when the circuit court directed them to return to their deliberations and complete a second verdict sheet. Hence, we cannot rule out the strong possibility that, in finding that the defendants were not negligent, the jurors were improperly influenced by the unfounded assertions that Dr. Davalos, Dr. DeLuca, or Dr. Eugene Ahn were. *See Copsey v. Park*, 453 Md. at 167 n.7. Accordingly, we must reverse and remand for a new trial.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.**

# APPENDIX A

The court drafted a verdict sheet that contained the following questions and instructions:

1.  Do you find that, between December 2011 and August 2014, Defendant Victor Bracey, M.D., acting in his capacity as an employee of Defendant American Radiology Associates, P.A., breached the standard of care in treating Plaintiff Martin Reiss?

_____ Yes      _____ No

*If your answer to Question 1 is "Yes," please proceed to Question 2.*
*If your answer to Question 1 is "No," please proceed to Question 3.*

2.  Do you find that a breach of the standard of care by Defendant Dr. Bracey was a cause of injury to Plaintiff Martin Reiss?

_____ Yes      _____ No

*Please proceed to Question 3.*

3.  Do you find that, between December 2011 and August 2014, Defendant Sungkee Ahn, M.D., acting in his capacity as an employee of Defendant American Radiology Associates, P.A., breached the standard of care in treating Plaintiff Martin Reiss?

_____ Yes      _____ No

*If your answer to Question 3 is "Yes," please proceed to Question 4.*
*If your answer to Question 3 is "No," and you answered "No" to either Questions 1 or 2, please Stop and summon the Clerk.*

4. Do you find that a breach of the standard of care by Defendant Sungkee Ahn was a cause of injury to Plaintiff Martin Reiss?

_____ Yes     _____ No

*If your answer to Question 4 is "yes," please proceed to Question 5.*

*If your answer to Question 4 is "No," and you answered "Yes" to both Questions 1 and 2, please proceed to Question 5.*

*If your answer to Question 4 is "No," and you answered "No" to either Questions 1 or 2, please Stop and summon the Clerk.*

5. Do you find that Plaintiff Martin Reiss was negligent and that his negligence was a cause of his injury in or following September 2011?

_____ Yes     _____ No

*If your answer to Question 5 is "Yes," please Stop and summon the Clerk.*

*If your answer to Question 5 is "No," please proceed to Question 6.*

6. Do you find that a negligent act or acts of Dr. Russell DeLuca or Dr. Julio G. Davalos or Dr. Eugene Ahn were [sic] a substantial factor in causing injury to Plaintiff Martin Reiss?

_____ Yes     _____ No

*Please proceed to Question 7.*

7. What damages, if any, do you find for Plaintiff Martin Reiss for his injuries from a Defendant's medical negligence?

Economic Damages     _____
Non-economic damages     _____
TOTAL     _____

2

# APPENDIX B

#1

| MARTIN REISS | * | IN THE |
| --- | --- | --- |
| Plaintiff, | * | CIRCUIT COURT |
| v. | * | FOR |
| AMERICAN RADIOLOGY ASSOCIATES, P.A., VICTOR BRACEY, M.D., and SUNGKEE AHN, M.D. | * * * | BALTIMORE CITY |
|  |  | CASE NO.: 24-C-16-002826 |
| Defendants. | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## VERDICT SHEET

1. Do you find that, between December 2011 and August 2014, Defendant Victor Bracey, M.D., acting in his capacity as an employee of Defendant American Radiology Associates, P.A., breached the standard of care in treating Plaintiff Martin Reiss?

_____ Yes          ____X____ No

*If your answer to Question 1 is "Yes," please proceed to Question 2.*
*If your answer to Question 1 is "No," please proceed to Question 3.*

2. Do you find that a breach of the standard of care by Defendant Dr. Bracey was a cause of injury to Plaintiff Martin Reiss?

_____ Yes          ____X____ No

*Please proceed to Question 3.*

3. Do you find that, on or about March 21, 2012, Defendant Sungkee Ahn, M.D., acting in his capacity as an employee of Defendant American Radiology Associates, P.A., breached the standard of care in treating Plaintiff Martin Reiss?

_____ Yes          ____X____ No

*If your answer to Question 3 is "Yes," please proceed to Question 4.*
*If your answer to Question 3 is "No," and you answered "No" to either Questions 1 or 2, please Stop and summon the Clerk.*

4. Do you find that a breach of the standard of care by Defendant Dr. Sungkee Ahn was a cause of injury to Plaintiff Martin Reiss?

_____ Yes                    ___X___ No

*If your answer to Question 4 is "Yes," please proceed to Question 5.*
*If your answer to Question 4 is "No", and you answered "Yes" to both Questions 1 and 2, please proceed to Question 5.*
*If your answer to Question 4 is "No," and you answered "No" to either Questions 1 or 2, please Stop and summon the Clerk.*

5. Do you find that Plaintiff Martin Reiss was negligent and that his negligence was a cause of his injury in or following September 2011?

_____ Yes                    ___X___ No

*If your answer to Question 5 is "Yes," please Stop and summon the Clerk.*
*If your answer to Question 5 is "No," please proceed to Question 6.*

6. Do you find that a negligent act or acts of Dr. Russell DeLuca or Dr. Julio G. Davalos or Dr. Eugene Ahn were a substantial factor in causing injury to Plaintiff Martin Reiss?

___X___ Yes                    _____ No

*Please proceed to Question 7.*

7. What damages, if any, do you find for Plaintiff Martin Reiss for his injuries from a Defendant's medical negligence?

Economic Damages        $ 4,863,393.70

Non-economic Damages    $ 0

TOTAL                   $ 4,863,393.70

Date: 7/7/17                Foreperson: _____

**Please summon the Clerk.**

2

# APPENDIX C

#2

| MARTIN REISS | * | IN THE |
|---|---|---|
| Plaintiff, | * | CIRCUIT COURT |
| v. | * | FOR |
| AMERICAN RADIOLOGY ASSOCIATES, P.A., | * | BALTIMORE CITY |
| VICTOR BRACEY, M.D., and | * | |
| SUNGKEE AHN, M.D. | * | |
| | | CASE NO.: 24-C-16-002826 |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## VERDICT SHEET

1. Do you find that, between December 2011 and August 2014, Defendant Victor Bracey, M.D., acting in his capacity as an employee of Defendant American Radiology Associates, P.A., breached the standard of care in treating Plaintiff Martin Reiss?

_____ Yes        \_\_\_\_X\_\_\_\_ No

*If your answer to Question 1 is "Yes," please proceed to Question 2.*
*If your answer to Question 1 is "No," please proceed to Question 3.*

2. Do you find that a breach of the standard of care by Defendant Dr. Bracey was a cause of injury to Plaintiff Martin Reiss?

_____ Yes        _____ No

*Please proceed to Question 3.*

3. Do you find that, on or about March 21, 2012, Defendant Sungkee Ahn, M.D., acting in his capacity as an employee of Defendant American Radiology Associates, P.A., breached the standard of care in treating Plaintiff Martin Reiss?

_____ Yes        \_\_\_\_X\_\_\_\_ No

*If your answer to Question 3 is "Yes," please proceed to Question 4.*
*If your answer to Question 3 is "No," and you answered "No" to either Questions 1 or 2, please Stop and summon the Clerk.*

4. Do you find that a breach of the standard of care by Defendant Dr. Sungkee Ahn was a cause of injury to Plaintiff Martin Reiss?

_____ Yes                    _____ No

*If your answer to Question 4 is "Yes," please proceed to Question 5.*
*If your answer to Question 4 is "No", and you answered "Yes" to both*
*Questions 1 and 2, please proceed to Question 5.*
*If your answer to Question 4 is "No," and you answered "No" to either*
*Questions 1 or 2, please Stop and summon the Clerk.*

5. Do you find that Plaintiff Martin Reiss was negligent and that his negligence was a cause of his injury in or following September 2011?

_____ Yes                    _____ No

*If your answer to Question 5 is "Yes," please Stop and summon the Clerk.*
*If your answer to Question 5 is "No," please proceed to Question 6.*

6. Do you find that a negligent act or acts of Dr. Russell DeLuca or Dr. Julio G. Davalos or Dr. Eugene Ahn were a substantial factor in causing injury to Plaintiff Martin Reiss?

_____ Yes                    _____ No

*Please proceed to Question 7.*

7. What damages, if any, do you find for Plaintiff Martin Reiss for his injuries from a Defendant's medical negligence?

|                      |                 |
|----------------------|-----------------|
| Economic Damages     | $_____  |
| Non-economic Damages | $_____  |
| TOTAL                | $_____  |

Date: __7/7/17__                    Foreperson: _____

**Please summon the Clerk.**

2